A jury found appellant-defendant guilty of the possession of marijuana for his personal use only and fixed his punishment at a fine of $750.00. The trial court imposed additional punishment of imprisonment in the Houston County Jail for six months.
The only issue raised by appellant is one that was first raised by defendant in pretrial motion to suppress evidence, which the trial court overruled. The evidence sought to be suppressed consisted of testimony of officers pertaining to their discovery on the land of defendant of some marijuana in the form of green plants growing thereon, their procurement of some of such plants and having them chemically examined and their production of some of such plants at the trial of the case. Appellant says that as the officers had no search warrant, as to which there is no dispute, there was a violation of defendant's right to security against unreasonable searches and seizures guaranteed by the Fourth Amendment to the Constitution of the United States and Art. I, Sec. 5 *Page 263 
of the Constitution of Alabama of 1901, which inhibited the admission in evidence of their testimony. It is to be noted that in the Federal Constitution the right of security of the people against unreasonable searches and seizures is "in their persons, houses, papers and effects," while in the Alabama Constitution it is "in their persons, houses, papers, and possessions."
It has been definitely settled in Alabama that the use of the word, "possessions," in the Alabama Constitution as distinguished from the word, "effects," does not manifest any intent to enlarge the protection against unreasonable search and seizure provided by the United States Constitution. This was decided in Brown v. State, 48 Ala. App. 84, 261 So.2d 914
(1971), aff'd, 288 Ala. 732, 261 So.2d 919 (1972). In so holding the Court of Criminal Appeals also held and stated therein at 261 So.2d 916, 917:
 "It does not appear that the Appellate Courts of Alabama have ever extended the protection afforded by the constitutional provision, supra, to open fields or pasture land beyond the curtilage of the home or business establishment. The appellant argues that the word `possession' in the said constitutional provision should be held to include more than houses, homes, and the curtilage thereof and be broad enough to include land where there is occupancy and full dominion exercised over it. The Supreme Courts of Tennessee and Mississippi have adopted this view, holding in cases involving the operation of stills in open lands, beyond the curtilage of the defendant's home, that evidence secured without a search warrant, was illegal and inadmissible. Barnard v. State, 155 Miss. 390, 124 So. 479; Welch v. State, 154 Tenn. 60, 289 S.W. 510.
 "However, in the cases of Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Atwell v. United States, 5 Cir., 414 F.2d 136; Stark v. United States, 8 Cir., 44 F.2d 946; Koth v. United States, 9 Cir., 16 F.2d 59, the federal courts have held that the protection of the 4th Amendment to the Constitution of the United States does not extend to open fields.
 "Our research indicates that the present weight of authority, state and federal courts, supports the above cited cases. . . .
". . .
 "This court sees no good reason to depart from a time-honored understanding of the Bar and Courts that Article I, § 5, Constitution of 1901 does not extend to open land outside of the curtilage, nor do we think that the framers of the Constitution of 1901 intended it to be so inclusive. We prefer to follow the rule laid down, supra, in the Federal Courts, and hold that the search of the pasture land was not illegal and the court was not in error in overruling the motion to exclude this evidence."
In finding defendant guilty of possession of marijuana for his personal use only, the jury found defendant guilty of a misdemeanor only, which is a lesser included offense of the felony with which he was charged in the indictment that contained no reference to "personal use only." Code of Alabama 1975, § 20-2-70; Van Nostrand v. State, 56 Ala. App. 141,319 So.2d 760 (1975).
The undisputed evidence shows that marijuana plants were found upon defendant's land and that the land, at the time, where all of the marijuana was found, was under the actual dominion of defendant. There is irreconcilable conflict between the testimony of witnesses for the State and that of defendant and his wife as to his knowledge of the presence of the marijuana growing on his land.
On the hearing of the motion to suppress, the only evidence presented was that of the movant, consisting of the testimony of two law enforcement officers, Leroy Wood and Gerald Mondy. The same two officers testified on behalf of the State on the trial before the jury. Their testimony on the hearing of the motion to suppress consists of approximately sixty-four pages of the transcript. During such hearing, defendant utilized a previously prepared plat, purportedly drawn to scale, of the area in which *Page 264 
the marijuana was found and some of the environs thereof.
In appellant's STATEMENT OF THE ISSUES, he expressly divides it into two parts:
 "A. Should the Plain View Doctrine apply where the initial intrusion is unlawful?
 "B. Should the Open Field Doctrine apply to property within the curtilage of the dwelling?"
It seems that appellant argues that should either question A or question B be answered in the negative he supports his position that there was an unreasonable search and seizure. We do not agree, as our discussion hereinafter shows, but we will proceed to consider and discuss under an appropriate heading each of said questions.
 "A"
Appellant correctly takes the position that the "Plain View Doctrine" does not apply where there is no justification for the intrusion. Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Herrin v. State, Ala.Cr.App., 349 So.2d 103, cert. denied, 349 So.2d 110 (1977);Simpson v. State, 51 Ala. App. 279, 284 So.2d 734 (1973). Although there was considerable discussion and evidence pertaining to the question of the plainness of view of the growing marijuana, an answer to the question whether there was a violation of defendant's right to security against an unreasonable search and seizure does not turn, in whole or in part, upon the plain view doctrine. This is true even though it appears that the officers in their testimony indicated that they were relying upon the plain view doctrine.
Application of the plain view doctrine as one of the six exceptions[1] to the rule requiring a search warrant prior to a search and seizure presupposes a search either of the person or a search or seizure of property within the meaning of the terms "houses, papers and effects," as employed in the United States Constitution, or "houses, papers, and possessions," as used in the Alabama Constitution. In none of the cases just cited was there an open field. There was no occasion for the consideration of the open fields doctrine. The open fields doctrine does not give rise to an exception to the requirement that a search warrant be obtained before a search is made of the kinds of property covered by pertinent Constitutional provision. The open fields doctrine constitutes an established principle in Alabama and in most jurisdictions, including the jurisdiction of United States Courts, to the effect that open fields do not come within the coverage of the quoted Constitutional provisions as to unreasonable searches and seizures.
The plain view doctrine and the open fields doctrine have separate and distinct fields of operation, and the requirements for the application of the one are not the same as the requirements for the application of the other. Resolution of the question whether there was an unreasonable search or seizure in this case hinges upon whether the land upon which the marijuana was found was such as to make applicable the open fields doctrine. We now turn to that particular issue.
 "B"
Appellant is correct in his argument that the open fields doctrine does not apply "to property within the curtilage of the dwelling," and thereby gives a negative answer to the issue formulated by him and lettered "B." The correctness of this position is clearly shown in Whistenant v. State, 50 Ala. App. 182, 278 So.2d 183, 194, cert. denied, 291 Ala. 802,278 So.2d 198 (1973), as follows:
 "The protection of the Fourth Amendment securing people in their persons, houses, papers, and effects against unreasonable search and seizure does not apply to `open fields." Edwards v. United States, (10 Cir.) 206 F.2d 855; Hester v. United States, 265 U.S. 57, *Page 265 44 S.Ct. 445, 68 L.Ed. 898; United States v. One 1967 Dodge Pickup Truck, (D.C.) 310 F. Supp. 773.
 "The Fourth Amendment does, however, apply to buildings within the curtilage which may include `a garage, Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951; a barn, Walker v. United States, (5 Cir.) 225 F.2d 447; a smokehouse, Roberson v. United States, (6 Cir.) 165 F.2d 752; a chicken house, Walker v. United States, (5 Cir.) 125 F.2d 395, and similar property. Whether the place to be searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family.' Care v. United States, (10 Cir.) 231 F.2d 22 (emphasis added)."
We do not find any disagreement between the parties as to the principle of law stated. The disagreement is as to whether the marijuana was in the curtilage of defendant's residence. We do not agree with appellant's assumption or conclusion that it was. Certainly, none of it was in any kind of a building or under any kind of a shed.
The previously mentioned drawing or plat of the premises involved, which constitutes defendant's Exhibit 1 on the hearing of the motion to suppress and on the trial of the case, was repeatedly and extensively used, but in the utilization thereof more body language was employed than oral or written language, so that it is practically impossible for an appellate court to conclude therefrom that any of the marijuana was located at a place that could correctly be said to have been within the curtilage of defendant's residence. It is obvious that certainly some of it was not. A small specimen of the extensive use of the plat in such a way as to fail to reveal by the transcript of the evidence that which was doubtless revealed to then observant eyes is to be noted in the following:
 "Q. Will you describe that area in here that had these little circles on it (indicating).
 "A. Those are little patches of woods. There was a corn patch and a watermelon patch and a cantelope patch up here (indicating).
 "Q. Okay, so this right here was a little patch of woods right in this area (indicating)?
"A. Yes.
 "Q. Would you just draw a little arrow and put `patch of woods' right there (indicating).
"A. (Witness draws on diagram.)
 "Q. Okay, now, in the little patch of woods that you have identified, where exactly where were you stationed?
 "A. Right here in this general area this little — under a big oak tree (witness marks).
 "Q. Is that near the edge of the closest woods to Mr. Skipper's house?
 "A. It's the closest woods to his house, because this is open (indicating), and this is the front yard (indicating), and I believe there is a little corn patch right here (indicating) — it might have been some corn planted down there (indicating); I'm not positive.
". . .
 "Q. After you went to that plant, did you go to anywhere else on the property?
"A. Yes, I did.
"Q. Where?
 "A. I went in this general direction here (marking), and that was a dug-out area there that had approximately twelve to fifteen plants in it (indicating). From there we proceeded over — it looked like where the disc had come here, and there was another area here (indicating) that had approximately seventeen plants in it (marking).
 "We left there and we came back and went around behind the house. The last row in the garden there was a briarberry — I call it — over here there was three small plants right here (marking), and right here there was an area that was just clear (indicating). *Page 266 
"Q. This area right here — what do you . . .
 "A. It looked where the marijuana had failed to come up.
 "Q. You are talking about a plain area there, no grass or plants or anything?
 "A. Right. It looked like it had been hoed out around.
 "Q. Let me ask you: Down here in this area — let me ask you this: did you see a crab apple tree?
 "A. There is a crabapple tree over here (indicating), I believe.
 "Q. Is there anything down in this area here (indicating)?
"A. I don't know — I didn't go down there.
 "Q. Let me ask you: could this place where you have marked through here (indicating), could it have been in this area where these little arrows are down here (indicating)?
"A. I suppose it could be.
"Q. Do you know how far down you came?
 "A. I came from this point (indicating) to this point (indicating) to this point (indicating) back around the house to this point (indicating). From here to here (indicating) is approximately — I would say — a thousand feet, or maybe a little further, or less."
Defendant's Exhibit 1 was purportedly drawn to a scale of one inch equaling sixty feet. We deduce from it that it covers three or four or five acres of defendant's land adjacent to his residence, most of which is either north or east of the residence. In addition, the map vaguely shows several more acres of land north, south, and east of said three or four or five acres, as to which the ownership thereof is not clear. According to defendant's testimony on the trial, he owned thirty-one acres. Some of his testimony on direct examination was as follows:
 "Q. Okay. If you can identify — what is this right here?
"A. That is my house area.
"Q. All right. What is this area here?
"A. That is the garden area.
 "Q. Okay. Is there more than one fence down this side of this property?
 "A. Yes. The dotted line that is there, that is a fence.
 "Q. Is this property here in between here, is that your property?
"A. No. That belongs to Gene Clark.
"Q. Okay. Is Gene Clark related to you?
"A. First cousin.
"Q. Whose land is this?
"A. Gene Clark's.
"Q. Okay. Is this line right here, is that —
"A. That is my property line.
 "Q. Okay. And this area here where these curlicues are, what type of land is that?
 "A. From right in here to this area here, I had a bunch of trees and all pushed up and they are piled up in a great big pile. And, there is a willow, old pond willows have come up there and they are higher than this ceiling, just as thick as they come up.
"Q. Okay. Now is that through all of this area or —
"A. Back along in this area here.
"Q. And what is in this area here?
"A. A lot of underbrush, undergrown, vines, etc.
"Q. What is all of this?
 "A. That it a wooded area back in here and around in this way.
"Q. Okay. Do you have a vineyard right in here?
 "A. Right here I have a grape vineyard. Just about six grapevines in an arbor like.
"Q. What is in this area?
 "A. A bunch of undergrowth where I pushed up a bunch of trees and all in there.
"Q. What about this area here?
 "A. That is open, I pushed up a bunch of stumps right in here and planted some cane in there.
"Q. Okay. Had you done that prior to June 15?
"A. Yes. It was already up to pretty good size cane. *Page 267 
"Q. On June 15?
"A. Right.
"Q. What is this back here?
 "A. There is one watermelon row here, that thing has seventy hills of watermelons on it."
In deploring our inability to understand from the transcript all the evidence with the same facility as the trial court and jury were able to do by reason of their opportunity to observe the action of the hands of counsel and the witnesses while pointing to places and things on defendant's Exhibit 1, we do not mean to imply that we have any serious reservations in the conclusion we reach herein. The record is sufficient to convince us that the open fields doctrine applies, that the marijuana was not within the curtilage of defendant's residence and that the trial court was not in error in overruling defendant's motion to suppress the evidence or in overruling any other objection to the evidence on the ground that there had been any violation of defendant's right to security against an unreasonable search and seizure.
In endeavoring to keep separate two distinct doctrines — plain view and open fields — we do not overlook cases and the many instances in which both doctrines may be involved to their apparent amalgamation, such as where an officer intrudes into one's house and thereby obtains a plain view of property in an open field or where, while in an open field, he peers into one's house and thereby obtains a plain view of property therein. In such cases, as in the case before us, it is to be kept in mind that the undergirding principle is that ". . . the Fourth Amendment protects people, not places." Katz v. UnitedStates, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, 582 (1967). A case that serves well to illustrate a removal of the natural confusion as to the two doctrines that to same extent results from the use of one of two synonymous words, "plain" and "open," in each doctrine, is Conrad v. State, 63 Wis.2d 616,218 N.W.2d 252 (1974). It was held therein, in a murder case, that though the officer committed an "outrageous trespass" in digging on defendant's property with a backhoe without a warrant and unearthed the corpse of the alleged victim buried in the soil under a rock pile, evidence of the corpse was admissible, as it was found in an open field approximately four hundred and fifty feet from defendant's house. The court said at 218 N.W.2d 257:
 "Under the `open fields' doctrine, the fact that evidence is concealed or hidden is immaterial. The area is simply not within the protection of the Fourth Amendment. If the field where the body was found does not have constitutional protection, the fact that the sheriff, rather than observing the evidence that might have been in plain view, dug into the earth to find a body and committed a trespass in so doing does not confer protection."
The facts in Conrad, supra, as to the question whether the open fields doctrine applied, bear a striking resemblance, with a few exceptions, to the facts in the instant case. In both cases, the property was rural property. In Conrad, at 218 N.W.2d 254, the following facts are stated:
 "The Conrad farm consists of about 40 acres of unfenced land [there were vaguely described and located fences or a fence on at least one side of the land in the instant case]. A portion of it was heavily wooded. The house was set back from the road a distance of 150 feet. Several dog houses were located just north of the house. [200] feet north was another structure known as a pigeon building. The horse barn was 30 to 40 feet northeast of the pigeon building. [There were no structures other than the dwelling on the land in the instant case]. . . ."
The victim's body in Conrad, surpa, was approximately 450 feet from defendant's house. In the instant case, it appears, though inconclusively, that the batch of marijuana closest to defendant's house was approximately 200 feet east of defendant's house and that the other batches were at disconnected and more distant places northeast or north of the house. *Page 268 
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
[1] Definitely set forth in Daniels v. State, 290 Ala. 316,276 So.2d 441 (1973); Baker v. State, Ala.Cr.App., 340 So.2d 854, cert. denied, 340 So.2d 860 (1976).