SAM W. TAYLOR, Judge.
On July 1, 1982, appellant was found guilty of theft in the second degree for stealing irrigation pipe. He was sentenced to three years’ imprisonment.
A summary of the State’s case in chief is included herein because of appellant’s contention that the State failed to prove a prima facie case.
James Thebo testified that he was the owner of a quantity of aluminum irrigation pipe cut in 20-foot lengths which he kept in a field about a quarter of a mile from his house. He estimated that the pipe was worth $700 or more.
In early February of 1981, the witness visited the field and found that the pipe had been sawed into 10-foot sections and stacked into three piles.
Thebo said he then called the Sheriff’s office and deputies came to inspect the field. They told the witness to mark the pipe so that he could later identify it, and Thebo complied by spray painting the interior of the pipe red.
After that, Thebo, some of his friends, and on occasion, members of the Sheriff’s department set up a series of night watches on the field to see if anyone would return for the pipe.
The witness testified that on the night of February 15, he saw and identified his sto *1369 len pipe which was found slightly back in the woods and approximately 100 yards from the appellant’s rented house.
Thebo stated that he neither saw the appellant cut the pipe nor did he see the appellant take it anywhere.
State’s next witness, Jake Manning, testified that he was a friend of James Thebo. He also stated that he was familiar with the land where Thebo kept his pipe.
Manning said that on Sunday, February 8, Thebo told him that the pipe had been sawed in two and the witness then drove down to the field where the pipe was kept. He found that it had indeed been cut in two and placed in three piles on the edge of the field some 40 or 50 yards from the road.
Manning said that on Sunday night a week later, he was on watch sitting in a car upon a bank 15 or 20 feet high looking down on the road that led to the area where the pipe was kept. The witness stated he saw a car coming from the east about ½ mile away. Manning said he saw an old model Dodge sedan go down the hill toward Thebo’s property and in a few minutes it returned and drove by the bank where Manning’s car was sitting. The witness said that shortly thereafter, a red and white Dodge pick-up truck came down the hill and turned toward Thebo’s property. He said that he could not see any lights on the vehicle. Eventually the truck came back within the witness’s sight and he noticed that it had lights on and was loaded with pipe. Manning then followed the pipe-laden truck in his ear until it pulled into the driveway at the residence rented by the appellant, Clyde Cranmore. The witness stated that the truck never stopped from the time he started following it until it reached the appellant’s drive. Manning stated that the appellant’s yard had 10 or 12 people gathered in it and in addition, the car that he had seen driving toward the Thebo property was parked in the yard. Manning stated that he pulled up beside the truck and that at most he was four or five feet from it.
Manning stated that the appellant got out of the truck and asked him how he was doing and the witness replied, “All right, sir, how are you?” Then Manning left and went directly to a phone to notify deputies that the pipe had been stolen. He also called James Thebo and James Bartles to tell them where the pipe was.
The witness said that when he later returned to appellant’s house that night, Cranmore was gone and the pipe was no longer in the truck. The car which had earlier been parked in the yard was also missing. Manning instructed the deputies he had summoned to the scene to test the lights on the truck in the yard since the truck he had seen with the pipe in it had had no tail lights. The subsequent test confirmed that the truck had no tail lights and the vehicle was confiscated by Sheriff’s deputies.
Manning discussed with one of the officers on the scene where the pipe could be and the witness decided to walk up the road to look around. He subsequently found some “fresh dirt” where a truck had apparently been and about 100 yards from the appellant’s rented house the witness found between 350 and 380 feet of pipe that had been painted red on the interior.
State’s next witness James Bartles testified that he was a friend of James Thebo and was familiar with the field where The-bo kept the irrigation pipe. He stated that on the morning of February 8, he and The-bo visited that field and found fresh tracks going into it. He stated he knew the tracks were fresh since it had rained heavily the day before. He also stated that some of the pipe had been sawed up and stacked in piles around the field. Bartles testified that he and Thebo then notified the Sheriff’s department and subsequently they set up a system to watch the field which continued for eight nights.
The witness testified that on the evening of February 15, his grandfather, Jake Manning, was watching the field. At approximately 7:00 p.m., Manning phoned Thebo and Bartles to tell them that the pipe had been stolen.
*1370 The two men then started for the appellant’s residence but stopped about 50 to 75 yards from the house to wait for the Sheriff’s deputies. Bartles stated that he saw appellant get into his car and then drive, several times, by the vehicle in which Thebo and the witness were sitting. ■ The appellant returned to his house and at approximately 8:15 p.m., he and several other people who were in the house got into a car and left.
Bartles said that later that night after Jake Manning discovered the missing pipe about 100 yards from appellant’s house, the witness inspected the pipe and found it had red paint in it.
Autauga County Deputy Sheriff Saul Dearman testified that he went to Cran-more’s house on the night of February 15. He said that while there he observed a red and white pick-up truck sitting in the driveway. In addition, he noticed a fresh set of vehicular tracks where the truck had apparently pulled into the driveway and he found that the hood of the truck was still warm even though it was a cool night. The witness stated that he knocked on the appellant’s door and there was no answer, but at no time did he enter Cranmore’s house. Sergeant Roger Mullins and former deputy Jack Tant corroborated portions of Deputy Dearman’s testimony. Eventually, the officers on the scene called a wrecker and impounded the truck parked in appellant’s drive. When asked why he had the truck towed in, Dearman replied, “Because it had no keys in it and was used in commitment of a felony.” (R-91).
I
Appellant’s first claim on appeal is that the trial court erred in denying his motion to exclude the evidence, because, he contends, the State failed to prove a prima facie case. He states that there was “absolutely no showing” that he “ever had possession of any aluminum pipe” and he also claims that there was “no showing of any ‘felonious taking and carrying away’ of any pipe” by the appellant. We find no merit in this argument.
Based upon the foregoing recitation of testimony we find that the trial court did not err in denying the motion to exclude the evidence.
II
The second issue appellant raises on appeal is whether or not the trial court erred in denying his motion to suppress the pipe discovered as the result of a warrantless search of property near appellant’s rented house.
In his brief, appellant concedes that the property upon which the stolen pipe was discovered was located outside the cur-tilage of his rented property. Thus we find that the warrantless search for and seizure of the pipe which was located 100 yards from appellant’s residence was justified under the “open fields” doctrine. Skipper v. State, 387 So.2d 261 (Ala.Cr.App.), cert. denied, 387 So.2d 268 (Ala.1980). That doctrine expressly excludes open fields from the protection against warrantless searches given to persons, houses, papers and effects under the 4th amendment to the Constitution. See C. Gamble, McElroy’s Alabama Evidence § 334.01(3)(c) (3d ed. 1977).
Thus, there was no error in denying the motion to suppress the pipe.
III
Appellant next raises the issue of whether or not the trial court erred in refusing to instruct the jury to disregard certain testimony given by Deputy Saul Dearman about the truck found parked near appellant’s residence. The portion of the transcript to which appellant refers reads as follows:
“Q. [By State’s attorney] What did you do with the truck?
“A. We called the wrecker and had it towed to the sheriff’s office and impounded it.
“Q. For what purpose did you have it towed in?
“A. Because it had no keys in it and it was used in commitment of a felony.
*1371 “HON. STEVE LANGHAM: Judge, I object to that. That calls for a conclusion on the part of the witness and I wish you would instruct the jury not to consider that.
“THE COURT: You waited for the answer before you objected.
“HON. STEVE LANGHAM: Judge, it was a direct response to that answer, which would not necessarily have included a surmise on the part of this witness.
“THE COURT: Motion is denied.” (R. 91-2)
We find that the trial court should have instructed the jury to disregard Dear-man’s conclusory statement that the truck was used in “commitment of a felony,” since the deputy did not have personal knowledge of all the elements of the offense.
However, we feel that any possible detrimental effect created by Dearman’s testimony was subsequently cured by the cross-examination of the witness by defense counsel almost immediately after the offending comment was made. That portion of the record reads as follows:
“Q. Saul, you didn’t — you say used in the commitment of a felony. You didn’t see any felony committed in that pickup truck, did you?
“A. No, sir, I didn’t see it.
“Q. Just strictly hearsay. This is what Mr. Jake Manning told you, is that correct?
“A. That is correct.
“Q. Okay. So that was just conjecture on your part that there was a felony committed in that pickup truck?
“A. That is true.” (R 92)
Thus, we find the impression given the jury was corrected and rendered harmless by subsequent evidence. See, A.R.A.P. 45 and Committee Comments thereto.
IV
Appellant’s final contention on appeal is that the' trial court erred in denying his motion for mistrial based on a comment made to a juror by the district attorney outside the presence of other jurors but in front of defense counsel and the trial judge.
Since the comment was not preserved for the record, we are unable to say whether it was so prejudicial as to affect the impartiality of that juror. Without more, this affords no basis for reversal. In addition, at the time the court denied the defense motion for a mistrial and supplied the substitute remedy of making the juror in question a “second alternate,” who eventually did not participate in the deliberations, defense counsel made no further objection. Thus, the issue of whether the court’s effort to remedy the problem was sufficient, was not preserved for our review. Kendricks v. State, 378 So.2d 1203 (Ala.Cr.App.1979).
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.