In re: Steven M. ASKIN, Appellant,

UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark T. McNULTY, Defendant.

No. 94–5428.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1994.
Decided Feb. 2, 1995.

Steven M. Askin, a non-party witness in a drug conspiracy trial, refused to answer certain questions posed to him by the government on the ground that the questions were based on information obtained by electronic surveillance in violation of the Fourth Amendment and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510–2521 (1988). The district court cited Askin for civil contempt, from which he now appeals. Mindful of the fact that Title III represents a comprehensive effort by Congress to strike a careful balance between rights of personal privacy and the needs of law enforcement, and reluctant to employ constitutional concepts to overturn that balance, we hold that the surveillance in this case was lawful. Askin therefore lacked just cause to refuse to testify, and we affirm the judgment of the district court holding him in contempt.

## I.

In early January of 1994, a West Virginia grand jury indicted several individuals on multiple drug-related offenses, including conspiracy to distribute cocaine. As part of its pre-indictment investigation, the government monitored telephone conversations between appellant Askin and Robin L. Brumbaugh, who was among those named in the indictment as a co-conspirator.

The calls were conducted by Askin on either a traditional land-based telephone or a cellular car phone, while Brumbaugh spoke on a cordless phone. Cordless telephone communications are transmitted between the cordless phone handset and its base unit by AM or FM radio signals. These signals can be intercepted with relative ease by standard AM radios. Government agents, without prior judicial authorization, used a radio scanner to intercept and record the radio waves emitted from Brumbaugh's cordless phone.

Askin, who is an attorney, was originally involved in this case as defense counsel to Brumbaugh and another defendant, Paul E. Frazier. When it became clear that the government intended to call Askin as a trial witness on its behalf, the magistrate judge

**ARGUED:** William Benjamin Moffitt, Moffitt, Zwerling & Kemler, Alexandria, VA; Kevin David Mills, Burke Street Law Center, Martinsburg, WV, for appellant. Thomas Oliver Mucklow, Asst. U.S. Atty., Wheeling, WV, for appellee. **ON BRIEF:** William D. Wilmoth, U.S. Atty., Wheeling, WV, for appellee.

Before WILKINSON, Circuit Judge, PHILLIPS, Senior Circuit Judge, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Senior Judge PHILLIPS and Senior Judge LAY joined.

## OPINION

WILKINSON, Circuit Judge:

This case raises questions about the respective roles of Congress and the courts in judging the propriety of surveillance activity involving advancing technologies. Appellant

granted the government's motion to disqualify him as defense counsel in the case. The government then issued a subpoena to Askin on April 6, 1994.

Following issuance of the subpoena, Askin filed two pre-trial motions: a motion to suppress the intercepted material and a motion to quash the subpoena. The suppression motion argued, *inter alia*, that use of the intercepted material would violate Askin's rights under Title III and the Fourth Amendment. Askin's motion to quash argued that the subpoena violated the attorney-client privilege and the Sixth Amendment. The district court denied both motions.

The case then proceeded to trial. The government called Askin, who had been granted use immunity for his testimony, as a witness in its case-in-chief. In an *in camera* hearing, the prosecutor asked Askin several introductory questions regarding his name and employment, which Askin answered. Askin refused, however, to answer the prosecutor's next question referring to one of the defendants: "Do you know a Mark McNulty?" Askin maintained that the question was based on conversations between him and Brumbaugh that the government had intercepted in violation of the Fourth Amendment.

■ The district judge reminded Askin that he was testifying under a grant of immunity, informed him that she had previously rejected his Fourth Amendment argument, and ordered him to respond. Askin again resisted the first question. He then refused to answer the following questions, which he also believed were derived from the intercepted conversations: "Do you know Robin L. Brumbaugh?," "Do you know Mark Dabbs?" (another defendant), "Have you used cocaine?," "Have you ever received cocaine, either by purchase or gift or in any other way, cocaine from Mark McNulty?" The court subsequently held Askin in civil contempt pursuant to 28 U.S.C. § 1826(a) (1988). Askin now appeals.[1]

---

1. The appeal of the civil contempt citation is not mooted by the conclusion of the underlying trial. The disposition of contempt charges against Askin may affect his status as a member of the West

## II.

■ Title 28 of the United States Code grants district courts the power to order the confinement of witnesses who refuse to comply with court orders to testify. It provides that:

> Whenever a witness in any proceeding before ... any court ... of the United States refuses without just cause shown to comply with an order of the court to testify ... the court, upon such refusal ... may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony....

28 U.S.C. § 1826(a). The statute plainly affords recalcitrant witnesses a "just cause" defense to civil contempt charges. In *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the Supreme Court held that a showing by a witness that his interrogation was based on illegal government surveillance is sufficient to constitute just cause for refusing to testify. *Id.* at 46–52, 92 S.Ct. at 2360–63. Thus, where a witness demonstrates that questions derive from unlawfully intercepted communications to which he was a party, such demonstration precludes an adjudication of contempt under § 1826(a). *Id.*

■ In challenging the validity of his contempt citation, Askin contends that he had just cause to refuse to testify because the questions propounded to him were the fruit of telephone conversations monitored in violation of both Title III and the Fourth Amendment. We shall address the statutory and constitutional claims in turn.

## A.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, forbids the warrantless interception of wire, oral, and electronic communications. 18 U.S.C. § 2511. If a particular conversation does not qualify as either a wire, oral, or electronic communication, it is not protected from interception by Title III. *United*

---

Virginia Bar. Furthermore, Askin has recently been indicted on criminal contempt charges for his refusal to purge himself of the civil contempt citation.

*States v. Smith,* 978 F.2d 171, 175 (5th Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1620, 123 L.Ed.2d 179 (1993). We must first ask whether the Askin–Brumbaugh telephone conversations—transmitted and intercepted via radio wave from Brumbaugh's cordless telephone—fell within any of the statutory categories of protected communication at the time those conversations took place.

At the time of the conversations in question, the statute made plain that the radio component of cordless phone conversations was, by definition, neither a wire nor electronic communication. It defined wire communication as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception ... *but such term does not include the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit.*" 18 U.S.C. § 2510(1) (emphasis added). The statute similarly provided that electronic communication "means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system ... *but does not include the radio portion of a cordless telephone communication that is transmitted between the cordless telephone handset and the base unit.*" 18 U.S.C. § 2510(12)(A) (emphasis added). Congress has since extended Title III's coverage to include the radio portion of cordless communications by simply striking the above exceptions from §§ 2510(1) and 2510(12)(A). *See* Communications Assistance for Law Enforcement Act, Pub.L. No. 103–414, § 202(a), 108 Stat. 4279 (1994). At the time this case arose, however, §§ 2510(1) and 2510(12)(A) expressly excluded the radio portion of cordless communications from the definition of wire and electronic communication, and thus from the statutory ban on the warrantless interception thereof.

Nor did the cordless conversations fall within the meaning of "oral communication." That term includes "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). Virtually every court to have faced the question of whether cordless phone conversations were oral communications under § 2510(2) answered in the negative. *See Smith,* 978 F.2d at 175–76; *Tyler v. Berodt,* 877 F.2d 705, 706–07 (8th Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); *United States v. Carr,* 805 F.Supp. 1266, 1271–72 (E.D.N.C.1992); *Edwards v. Bardwell,* 632 F.Supp. 584, 589 (M.D.La. 1986). Moreover, Congress has always addressed the question of cordless telephone conversations as wire or electronic, not oral, communications. *See e.g.,* 18 U.S.C. §§ 2510(1), 2510(12)(A); Pub.L. No. 103–414, § 202(b), 108 Stat. 4279 (1994) (amending § 2511(4)(b) of Title III, which provides penalties for the interception of certain "wire or electronic communication," to include cordless telephone communications).

Thus the cordless telephone conversations between Askin and Brumbaugh were not protected by Title III at the time the surveillance in this case occurred. Askin, however, urges this court to take a bifurcated view of the communications at issue, focusing exclusively on his end of the conversations in determining the applicability of the statute. Notwithstanding the fact that Brumbaugh used an unprotected cordless phone, Askin argues that he himself used either a traditional wire-based or cellular telephone, which he states are protected instruments under Title III. Thus, he concludes, Title III's prohibition against warrantless interception applies in this case.

We are unpersuaded. At the outset, it is important to recognize that Title III was designed as a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard,* 408 U.S. at 46, 92 S.Ct. at 2360. The interception of wire, oral, and electronic communication, without prior judicial approval, is clearly prohibited by § 2511. Yet it was equally clear, as of the time of Askin's conversations, that §§ 2510(1) and 2510(12)(A) permitted the interception of cordless radio waves. It is undisputed that this case involved the interception of the radio component of cordless telephone trans-

missions by a radio scanning device. Both Brumbaugh's and Askin's words traveled over the radio waves between the base unit of her telephone and its handset; hers traveled from the handset to the base, whereas his traveled from the base to the handset. Where, as here, one party used a cordless phone and the radio waves broadcast from that instrument were intercepted, the statutory exceptions for "the radio portion" of cordless telephone communications "transmitted between" the handset and base applied to both sides of the conversation by the force of their unambiguous terms. *See also Carr*, 805 F.Supp. at 1268 n. 3, 1269 (describing the fact that some cordless communications involved protected land-based telephones as a "distinction[ ] without a difference" because "unless the cordless telephone was in use, broadcasting radio waves from the base to the handset and back, the agents [using scanners] were unable to intercept the conversation").

The statute thus was plain: the exclusion of the radio portion of cordless transmissions from the protected categories of wire and electronic communication admitted of no exception. Title III, like all legislation, attempts to prescribe with sufficient clarity rules that permit individuals, including those in the business of law enforcement, to steer clear of illegality. Askin's argument, however, would strip the statute of its plain prescriptive quality and penalize persons for conduct whose character they could not have appreciated *ex ante*. To take account of the nature of other instruments in applying the exceptions for cordless radio waves in §§ 2510(1) and 2510(12)(A) would also be to append the following language at each provision's close: "... except when those radio portions are ultimately transmitted to, by radio wave or otherwise, or received by, any telephone instrument protected under this title." The amendment that Askin seeks—privacy protection for third parties to unprotected communications—may well be desirable as a matter of telecommunications policy, but it is one that this court is powerless to promulgate. We note that Congress, the proper repository of such authority, has only recently demonstrated its willingness to safeguard public privacy by amending Title III

to protect both the radio and the wire portion of cordless communications. *See* Pub.L. No. 103–414, § 202, 108 Stat. 4279 (1994). The fact that Congress later covered the entirety of cordless telephone transmissions simply does not authorize a court to extend such coverage sooner. *See generally Landgraf v. USI Film Products*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

## B.

■ Askin further maintains that he had just cause to refuse to testify because the government's questions were based on information obtained in violation of the Fourth Amendment. Askin again presses a bifurcated view of his conversations with Brumbaugh, asserting that because he spoke on allegedly protected phones, his conversations were *ipso facto* shielded by the Fourth Amendment. Viewing the communications at issue in isolated segments is, however, as problematic in the context of the Fourth Amendment as it was in the context of Title III. We think a unitary view of an intercepted communication is more appropriate and thus conclude that the surveillance in this case violated no Fourth Amendment right.

As an initial matter, Askin's bifurcated perspective is troublesome in that it reflects a flawed conception of communication—a point that applies with equal force to his statutory argument. Contrary to appellant's suggestion, communication is by definition not a one-way street. "Communication" means "a process by which information is *exchanged between individuals* through a common system of symbols, signs, or behavior." Webster's Ninth New Collegiate Dictionary 266 (1984) (emphasis added). If it takes two to tango, it assuredly takes at least two to communicate. Generally, then, it makes little conceptual sense to treat conversations as a series of discrete and independent parts rather than as a unified whole. Moreover, in terms of the admissibility of intercepted communications, a bifurcated approach to the Fourth Amendment makes even less sense: one half of a conversation is not readily separable at trial from the other.

The Supreme Court's Fourth Amendment jurisprudence supports the view that a con-

versation should be seen in its entirety rather than in segments. In *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), the Court allowed government agents to testify at trial to conversations between a defendant and a government informant that were monitored without a warrant. In reaching this conclusion, the Court rejected a view of the conversations which focused exclusively upon the defendant. *Id.* at 749–50, 91 S.Ct. at 1125. Rather, the Court considered the additional (and ultimately dispositive) fact that when the defendant made the statements in question, he shared them with another person—a person who happened to be an unreliable confidant. *Id.* at 749, 91 S.Ct. at 1125. The person to whom one is speaking was deemed as critical for Fourth Amendment purposes as the person who speaks.

*White* underscored a second point pertinent to this appeal: that in the course of conversing with others, persons assume certain risks that may bear on the viability of any Fourth Amendment rights they subsequently assert.

> Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his.

*Id.* at 752, 91 S.Ct. at 1126; *see also Hoffa v. United States*, 385 U.S. 293, 302, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966) (cautioning that "no interest legitimately protected by the Fourth Amendment is involved" where an individual risks reliance on his "misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it"); *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966).

To be sure, there are differences between an informant and a cordless phone user at the other end of a communication. There exists, however, a crucial similarity between them for purposes of determining the existence of valid Fourth Amendment interests. The common characteristic of the government informant and the cordless phone user is that they are both unreliable recipients of the communicated information: one because he repeats the conversation to law enforcement officers and the other because he broadcasts the conversation over radio waves to all within range who wish to overhear. It is this general risk of unreliability of which *White* and *Hoffa* warn, not the specific risk that the listener is an informant per se. *See Hoffa*, 385 U.S. at 302–03, 87 S.Ct. at 413–14.

If it were true that the Fourth Amendment guaranteed parties using protected phones the right to be free from the warrantless interception of the cordless transmission on the other end of the line, then the blanket exceptions for the radio portions of such transmissions, which failed to provide for such a right, would contravene that guarantee. Were we to hold that Askin's end of the cordless communications was constitutionally protected, we would be forced to rule the statutory exceptions of Title III unconstitutional. Our rejection of Askin's Fourth Amendment argument, however, has the advantage of avoiding this untoward result, in accord with the Supreme Court's admonition that a "heavy presumption of constitutionality" attaches to the " 'carefully considered decision[s] of a coequal and representative branch of our Government.' " *Department of Labor v. Triplett*, 494 U.S. 715, 721, 110 S.Ct. 1428, 1432, 108 L.Ed.2d 701 (1990).

The general presumption of constitutionality afforded to duly enacted legislation has heightened significance with regard to Title III. As the uses of technology become more intrusive, claims of personal privacy will grow in importance. As the methods of criminal enterprises become more sophisticated, the needs of law enforcement in combatting them will also grow. Difficult judgments and trade-offs will be inevitable, just as they were in the most recent piece of surveillance legislation. *See* 140 Cong.Rec. H10779 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks) (describing the Communications Assistance for Law Enforcement Act as "the result of extensive negotiations among law enforcement, Congress, industry and the privacy community"). In the fast-developing area of communications technology, courts should be cautious not to wield the amorphous "reasonable expectation of privacy" standard, *see Katz v. United States*, 389 U.S. 347, 351–52, 88 S.Ct. 507, 510–12, 19 L.Ed.2d 576 (1967), in a manner that nullifies the

balance between privacy rights and law enforcement needs struck by Congress in Title III. Decisionmaking in this area demands a comprehension of complex technologies. *See e.g.*, S.Rep. No. 541, 99th Cong., 2d Sess. 8–11 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3562–65 (describing in great detail the new telecommunications and computer technologies regulated by the ECPA). Such understanding, however, requires precisely the type of expertise that courts are institutionally ill-equipped to acquire and to apply. As new technologies continue to appear in the marketplace and outpace existing surveillance law, the primary job of evaluating their impact on privacy rights and of updating the law must remain with the branch of government designed to make such policy choices, the legislature. Congress undertook in Title III to legislate comprehensively in this field and has shown no reluctance to revisit it. Accordingly, we must decline Askin's invitation to usher in through the Fourth Amendment a prohibition of that which Title III tells us, in no uncertain terms, Congress affirmatively permitted at the time this case arose.[2]

### III.

For the foregoing reasons, we hold that the surveillance activity in this case violated neither Title III nor the Fourth Amendment. Askin thus lacked just cause to refuse to testify under § 1826(a). The district court's judgment is

*AFFIRMED.*

---

[2] It is clear that under *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), Askin has standing to raise the legality of the government's surveillance in challenging his contempt citation. Our conclusion that the government has not engaged in unlawful surveillance would necessarily defeat Askin's motion to suppress the contents of the intercepted conversations, as well as his contention that he had just cause to refuse to testify. In view of the lack of merit in his claims of illegality, we, like the district court, see no need to reach the problematic question of Askin's standing to raise a motion to suppress, which would be deemed

meritless in any event for the reasons expressed in this opinion.

We also hold that the district court fully complied with 18 U.S.C. § 3504(a)(1), which requires that "upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act ... the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act." The government affirmed from the outset of this litigation that it monitored the Askin–Brumbaugh calls, although it consistently maintained that there was nothing unlawful about that activity.