UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

Nos. 94-5776(L)
(CR-94-6, CR-94-8)

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

United States of America,

Plaintiff - Appellee,

versus

Homer I. Gray, etc., et al,

Defendants - Appellants.

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

O R D E R

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

The Court amends its opinion filed July 17, 1996, as follows:

On page 2, section 1 -- the case number is corrected to read
"No. 94-5776."

For the Court - By Direction

/s/ Bert M. Montague

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 94-5776

HOMER I. GRAY, a/k/a Sonny,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 94-5801

PAUL E. FRAZIER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 94-5923

ROBIN L. BRUMBAUGH,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 94-5932

MARK W. DABBS,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                      No. 94-5950

MARK T. MCNULTY,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CR-94-6, CR-94-8)

Submitted: June 28, 1996

Decided: July 17, 1996

Before WILKINS and WILLIAMS, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, C. Cooper Fulton, Assis-
tant Federal Public Defender, Charleston, West Virginia; Patrick S.
Casey, SCHRADER, BYRD, COMPANION & GURLEY, Wheeling,
West Virginia; Patricia H. Stiller, Morgantown, West Virginia;
David M. Hammer, HAMMER, FERRETTI & SCHIAVONI, Mar-
tinsburg, West Virginia; James M. Pool, Clarksburg, West Virginia;
David A. Downes, Front Royal, Virginia, for Appellants. William D.
Wilmoth, United States Attorney, Thomas O. Mucklow, Assistant
United States Attorney, Sharon L. Potter, Assistant United States
Attorney, Wheeling, West Virginia, for Appellee.

_____

2

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

These appeals involve two related drug conspiracies in Martinsburg, West Virginia. Under one indictment, Frazier was convicted of conspiracy and two counts of cocaine distribution, while Robin Brumbaugh, Mark McNulty, and Mark Dabbs (Brumbaugh's brother) were convicted of conspiracy, racketeering, distribution of cocaine and crack, and possession with intent to distribute. McNulty was also convicted of possession of a firearm in relation to a drug trafficking crime. Subsequently, under a second indictment, Homer Gray and Paul Frazier pled guilty to distribution of cocaine and Gray pled guilty to distribution of powder cocaine and crack cocaine. Finding no merit in any of the issues raised by the Appellants, we affirm.

<u>Background</u>

Robin Brumbaugh's involvement with cocaine began in the late 1980's. In 1991, she and Mark McNulty began living together. Their friends obtained cocaine and crack from them and gathered at their house at 508 West Burke Street in Martinsburg to use drugs. They later moved to Kearneysville and discontinued their drug use and distribution in approximately late 1992. Mark Dabbs was Brumbaugh's brother; he and his wife were among those who used drugs with Brumbaugh and McNulty. Brumbaugh and McNulty got their cocaine from various sources, including a man known as Eli. Paul Frazier knew Brumbaugh and McNulty. He was not part of the group who socialized with them, but was seen a few times using drugs in the Martinsburg and Kearneysville houses and transacting business with her in an office in the Burke Street house. Frazier sold cocaine a few times to William Douglas Taylor, an attorney and a member of Brumbaugh's drug-using circle, first at McNulty's request and later on several other occasions. Taylor also bought cocaine from Homer Gray, who was at that time Frazier's source for cocaine.

3

I. Denial of Severance

Prior to trial, Frazier moved unsuccessfully for severance of the four counts in which he was named and for severance from the other defendants in the Brumbaugh/McNulty conspiracy. He asserts that he should have been tried separately because there was scant evidence of his involvement in the Brumbaugh/McNulty conspiracy and the jury was unable to separate the charges against him from the evidence against his co-defendants. However, defendants charged in the same conspiracy normally should be tried together. United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir.), cert. denied, 505 U.S. 1228 (1992). The strength of the government's case against a co-defendant is not a reason for severance unless there is also a strong showing of prejudice. Id. Frazier failed to make anything but a general allegation of prejudice in his pre-trial severance motion. His acquittal on one count demonstrates that he was not convicted simply because of his association with his co-defendants. Consequently, the district court did not abuse its discretion in denying the severance motion.

II. Denial of Mistrial

Frazier moved for a mistrial during the testimony of Martinsburg attorney William Douglas Taylor, a co-conspirator who obtained cocaine and crack from Brumbaugh and McNulty as well as from Frazier. The Brumbaugh/McNulty indictment charged Frazier with distributing one-eighth of an ounce of cocaine in December 1992, possessing half an ounce of cocaine with intent to distribute in December 1992, and distributing one-eighth of an ounce of cocaine in January 1993. The government's proof for all three counts was supplied by Taylor. Frazier was convicted of two counts, but acquitted of the third.[1]

Taylor became an informant and made controlled buys from Frazier in the summer of 1993 which were the basis for charges against Frazier in the Gray/Frazier indictment. At one point during Taylor's trial testimony, he volunteered that he had made a number of con-

_____

[1] Taylor did not testify that Frazier possessed half an ounce of cocaine with intent to distribute in December 1992 as charged in Count 94.

4

trolled buys from Frazier. The district court denied Frazier's motion for a mistrial and instructed the jury to disregard the statements.

Denial of a mistrial is reviewed for abuse of discretion. United States v. Dorsey, 45 F.3d 809, 817 (4th Cir.), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3907 (U.S. June 26, 1995) (No. 94-9433). To show an abuse of discretion, the defendant must show prejudice. Id. If the district court gives a curative instruction concerning whatever forms the basis for the mistrial motion and the jury subsequently demonstrates that it has followed the instruction by acquitting the defendant on some count, the defendant cannot show prejudice. Id. (citing United States v. West, 877 F.2d 281, 287-88 (4th Cir.), cert. denied, 493 U.S. 896 and 959 (1989), and 493 U.S. 1070 (1990)). Here, Frazier was acquitted on Count 94. Moreover, Taylor's remark was not solicited by the government. Because there was no government misconduct and a curative instruction was given, we find that a mistrial was not warranted.

III. Evidentiary Issues

A.

Mark Dabbs challenges the district court's decision not to admit page 19 of the grand jury testimony of Alayna Dabbs, his former wife. Alayna Dabbs testified under cross-examination that Dabbs had delivered drugs for Brumbaugh and McNulty. Dabbs's attorney then impeached her with her grand jury testimony, in which she had testified that she did not know for sure whether Dabbs had ever delivered drugs. Alayna Dabbs admitted that her grand jury testimony on this point was false and stated that she knew Mark Dabbs had delivered drugs. Dabbs's attorney then asked that page 19 of the grand jury transcript be admitted into evidence, but the district court denied the motion.

The government concedes that the page of Alayna Dabbs's grand jury testimony which Mark Dabbs sought to admit as extrinsic evidence was admissible under Federal Rule of Evidence 801(d)(1)(A). United States v. Stockton, 788 F.2d 210, 219-20 (4th Cir. 1986). However, the government contends that any error in the district court's refusal to admit page 19 of the grand jury transcript was harmless.

5

The government relies on United States v. Lashmett, 965 F.2d 179, 182 (7th Cir. 1992), in which the issue was whether a defendant is entitled to introduce extrinsic evidence of a prior inconsistent statement when the witness admits making such a statement. Lashmett acknowledged a split in the circuits and followed those circuits which hold that the defendant should be allowed to introduce extrinsic evidence of the prior inconsistent statement because it may be the most effective way of undermining the witness's credibility. Id. (citing Gordon v. United States, 344 U.S. 414, 420-21 (1953)). However, in Lashmett, the Seventh Circuit ultimately found that reversal was not necessary because, even without the extrinsic evidence, the defendant accomplished his objective of exposing to the jury the witness's prior deceit. Lashmett, 965 F.2d at 182-83. In this case also, Mark Dabbs accomplished his objective of exposing Alayna Dabbs' untruthful grand jury testimony. Therefore, we find that the district court's refusal to admit page 19 was harmless error.

B.

Appellants challenge on constitutional grounds the district court's refusal to suppress information obtained when the government intercepted, without a warrant, telephone conversations between Brumbaugh and Stephen Askin, then her attorney, which took place while Brumbaugh was using a cordless phone. Askin was called as a witness by the government, refused to answer questions which he believed were derived from the intercepted conversations, and was held in civil contempt. In his appeal from that order, we held that no violation of the Fourth Amendment occurred. See In re Askin, 47 F.3d 100, 106 (4th Cir.), cert. denied, ___ U.S. ___, 64 U.S.L.W. 3316 (U.S. Oct. 30, 1995) (No. 95-444). Therefore, this issue is without merit.

IV. Right of Confrontation

One of Brumbaugh's and McNulty's sources for cocaine was a man from Philadelphia known to them as Ely or Eli. He testified at trial, under the name Anderson "Eli" Dews, that he sold cocaine to Brumbaugh and McNulty during most of 1992. He encountered both Dabbs and Frazier at their house. In the summer of 1992, Eli bought a 9 mm pistol from McNulty for a half-ounce of cocaine. However,

6

after the trial it was discovered that his real name was Ivan James Eli and he had been arrested twice under that name.

At their sentencing hearings on December 1, 1994, and December 2, 1994, Brumbaugh and McNulty both argued that Eli's misrepresentation of his identity destroyed his credibility and that information derived from his testimony should not be considered in sentencing them. McNulty's attorney stated that the confrontation issue would be raised on appeal, but did not move for a new trial on this ground.

On appeal, Brumbaugh, McNulty, and Dabbs assert that they were denied the right to confront "Anderson Dews" about his two prior arrests and thereby impeach his credibility because they were unaware of his real identity as Ivan James Eli until notified by the government six months after trial. Appellants do not contend that the government knew Eli's true identity during the trial and they acknowledge that the district court did not limit cross-examination of Dews. They claim that the government had a duty to investigate Dews more thoroughly before trial, discover his true identity, and disclose the information to them.**2**

The Confrontation Clause guarantees the defendant an opportunity to cross-examine prosecution witnesses and protects his right to a cross-examination which is free from excessive restrictions. <u>Delaware v. Fensterer</u>, 474 U.S. 15, 18-20 (1985). The Confrontation Clause does not function as a discovery rule; it is a trial right which protects against improper restrictions on the questions asked by defense counsel. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39, 51-52 (1987). It does not require pretrial disclosure of all information which might be useful to the defense during cross-examination. <u>Id.</u> at 53. Claims relating to the discovery of the identity of witnesses or the production of exculpatory evidence are analyzed under the Due Process Clause. <u>Id.</u> at 56. The government is required "to turn over evidence in its possession which is favorable to the accused and material to guilt or innocence." <u>Id.</u> at

_____

**2** The government asserts that the issue for appeal is the district court's denial of Appellants' motion for a new trial based on newly discovered evidence. However, the district court did not rule on this issue. The new trial motions were filed before Dews' real identity was disclosed and raised different issues.

57. Evidence is material if there is a reasonable probability that its disclosure would have affected the outcome. Id. (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).

To comply with Bagley, a prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles v. Whitley, ___ U.S. ___, 63 USLW 4303 (U.S. Apr. 19, 1995) (No. 93-7927). Here, the probation officer discovered Eli's real name and arrest record after the trial. Appellants do not contend that anyone acting on the government's behalf knew of Eli's real identity before or during the trial. Moreover, there is no reasonable probability that pre-trial disclosure would have brought about a different result because Eli admitted being a drug dealer and the fact that he had two prior arrests would have had little effect on his credibility. Therefore, this claim is without merit.

V. Closing Argument

During closing argument, the government attorney identified most of the "known individuals" described in the indictment as persons who had testified at trial. Following their convictions on most of the charges against them, Brumbaugh, Dabbs, and McNulty filed timely new trial motions asserting that they had been denied due process because the government's closing argument allowed the jury to consider facts not in evidence. As a result, they argued, the government had not proved all the elements of each charged offense. Frazier joined in this motion, which the district court denied.

Brumbaugh, McNulty, and Dabbs contend on appeal that, by linking most of the numbered "known individuals" in the indictment to various government witnesses, the prosecutor improperly referred to facts not in evidence. They argue that these improper remarks caused them substantial prejudice and require a new trial. Appellants did not object to the government's closing argument at trial; the issue was first raised in their motions for new trial. Consequently, the issue is reviewed for plain error. Fed. R. Crim. P. 52(b); United States v. Mitchell, 1 F.3d 235, 239 (4th Cir. 1993). Reversal requires that the appeals court identify an error which is plain and affects substantial

8

rights and the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725 (1993).

The test for reversible error resulting from improper closing argument is that the prosecutor's remarks must have been improper and must have prejudicially affected the defendant's substantial rights so as to deprive him of fair trial. Mitchell, 1 F.3d at 240. In this case, the prosecutor made no improper remarks during closing argument. The government is not limited to a recitation of the facts in closing argument, but may make fair inferences from the evidence. United States v. Francisco, 35 F.3d 116, 120 (4th Cir. 1994), cert. denied, ___ U.S. ___ 63 U.S.L.W. 3563 (U.S. Jan. 23, 1995) (No. 94-7258); United States v. Brainard, 690 F.2d 1117, 1122 (4th Cir. 1982), cert. denied, 471 U.S. 1099 (1985). Moreover, the Fifth Circuit has held that it is a denial of due process to name an unindicted co-conspirator in an indictment or factual summary. See In re Smith, 656 F.2d 1101, 1107 (5th Cir. 1981); United States v. Briggs, 514 F.2d 794, 806 (5th Cir. 1975). Therefore, while there was good reason for the government not to name the unindicted persons in the indictment, the prosecutor could link the evidence presented by the trial witnesses with the charges made in the various counts, and draw inferences connecting the witnesses to those charges. No plain error occurred.

VI. Cumulative Error

Frazier asserts that he was denied a fair trial because of the cumulative effect of the district court's errors in denying his motions for acquittal, mistrial, and severance, and because of the errors raised by Brumbaugh, McNulty, and Dabbs, even if this Court finds that the alleged errors were individually harmless. In particular, he contends that his constitutional right of confrontation was denied by Eli's testimony under a false name. However, none of the claims of error have merit and, therefore, reversal on this ground is not available. See United States v. Rivera, 900 F.2d 1462, 1470-71 (10th Cir. 1990) (only actual harmless errors may have cumulative effect warranting reversal).

VII. Sufficiency of the Evidence

Frazier argues that there was insufficient evidence to convict him of involvement in the Brumbaugh/McNulty conspiracy. The convic-

9

tion must be sustained if, viewing the evidence and inferences from it in the light most favorable to the government, there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3563 (U.S. Jan. 23, 1995) (No. 94-7337). To prove a conspiracy, the government must show an agreement to commit an unlawful act. United States v. Giunta, 925 F.2d 758, 764 (4th Cir. 1991).

Several witnesses testified that they saw Frazier at 508 W. Burke Street, the house Brumbaugh and McNulty shared in Martinsburg, or later at their house in Kearneysville. Judy Minghini testified that Brumbaugh told her she had borrowed several thousand dollars from Frazier to buy drugs. She also once saw Frazier talking to Brumbaugh at 408 W. Burke Street in a room which was used as an office. Eli saw Frazier at the Kearneysville house using cocaine.

Most telling was Taylor's testimony that in late 1991 or early 1992, when Brumbaugh and McNulty were temporarily out of drugs, McNulty took him to Frazier's house so that Taylor could buy cocaine from him. Around the same time, Taylor was present when Brumbaugh was "conducting business" with Frazier. When Brumbaugh and McNulty stopped dealing drugs, Brumbaugh gave Taylor her telephone list, which Taylor used to contact Frazier when he wanted to buy cocaine. This evidence was sufficient to permit the jury to find that Frazier agreed with Brumbaugh and McNulty to violate the federal drug laws.

VIII. Sentencing

A.

Gray contends that his attorney was ineffective during his sentencing because he permitted Gray to stipulate to an amount of relevant conduct which included crack although Gray did not believe he should be held responsible for any crack for sentencing purposes. He also asserts that his attorney was ineffective in failing to raise the issue of sentencing entrapment or manipulation. A claim of ineffective assistance is not properly raised on direct appeal unless the record below conclusively demonstrates that counsel did not provide effec-

10

tive representation. <u>United States v. Williams</u>, 977 F.2d 866, 871 (4th Cir. 1992), <u>cert. denied</u>, 507 U.S. 942 (1993). Our examination of the record discloses that Gray has not made the required showing.

B.

In 1992 and 1993, before Frazier's indictment, investigators interviewed Ron Collins and Dwight Glenn, both of whom said Frazier had employed them to travel to Philadelphia to purchase cocaine with money he supplied. Collins reported making two trips in the summer of 1992 to buy half an ounce of cocaine, and also buying smaller amounts of cocaine for Frazier ten to fifteen times that summer, apparently from a local source. Glenn said he made five trips to Philadelphia in 1993, buying three to five ounces of cocaine each time until the last trip when Frazier gave him $6000 to buy a quarter of a kilogram. Glenn did not make the last purchase, but instead kept the money. Both Glenn and Collins pled guilty to criminal charges.

The probation officer included these amounts in the calculation of Frazier's relevant conduct (63.7 grams of cocaine for his involvement with Collins and 620 grams for his involvement with Glenn). Frazier objected. At his first sentencing hearing, the government presented the testimony of Martinsburg Police Detective Tim Catlett, who had interviewed Glenn and Collins. In response, Frazier testified that he knew both men only as customers at his pawn shop. The district court continued the sentencing so that the government could call Collins and Glenn as witnesses, as well as for additional testimony on another issue.

At the second hearing, the court focused principally on whether Gray's crack distributions to Taylor were foreseeable to Frazier. Then, after reviewing Glenn's grand jury testimony,[3] the district court found by a preponderance of the evidence that the information from

_____

[3] After the first hearing, Frazier's attorney informed the government that the objections to the information from Collins and Glenn would be withdrawn. At the second sentencing hearing, new counsel representing Frazier wished to reinstate the objections. Collins and Glenn were not present. The government presented a copy of Glenn's grand jury testimony.

11

Glenn and Collins was more reliable than Frazier's testimony. The court adopted the cocaine amount recommended by the probation officer.

Frazier argues (1) that Glenn's allegations lacked sufficient indicia of reliability, (2) that the court failed to find that his conduct with Glenn and Collins was part of the same course of conduct or common scheme or plan as the offense of conviction, see USSG § 1B1.3(a)(2), and (3) that the court clearly erred in implicitly finding that the Glenn allegations were relevant conduct under USSG § 1B1.3(a)(2). None of his contentions have merit.

Although Frazier points out small discrepancies between the statements Glenn made in his grand jury testimony and in his interview with the probation officer, Glenn's information had sufficient indicia of reliability because it was detailed, given under oath before the grand jury as well as to government investigators and to the probation officer, and generally consistent each time it was given. The points of difference were not brought out in the district court because Frazier did not dispute the particulars of the Glenn/Collins information but rather denied having any such dealings with either of them.

The district court's finding was adequate because the court adopted the probation officer's recommended finding that the conduct described by Glenn and Collins met the test for uncharged conduct which was part of the same course of conduct or common scheme or plan as the offense of conviction. See USSG § 1B1.3(a)(2). Such a finding is adequate if the ruling is clear. United States v. Walker, 29 F.3d 908, 911 (4th Cir. 1994). The ruling was clear in this case. Moreover, a sentencing decision may be affirmed even when the basis for the court's ruling is not clearly stated but the evidence supports the finding. United States v. Cook, 76 F.3d 596, 605 (4th Cir. 1996).

Drug conspiracy and drug distributions are offenses which are grouped under USSG § 3D1.2, and thus are covered by USSG § 1B1.3, although Frazier argues to the contrary. Uncharged conduct is part of a common scheme or plan as another offense if it is connected to the offense of conviction by at least one common factor, such as a common purpose. USSG § 1B1.3(a)(2), comment. (n.9(A)). In determining whether uncharged conduct is part of the same course

12

of conduct as another offense, the court must evaluate the similarity, regularity, and temporal proximity of the uncharged conduct to the offense of conviction. Cook, 76 F.3d at 605; USSG § 1B1.3, comment. (n.9(B)). Frazier's dealings with Glenn and Collins, Gray, Brumbaugh and McNulty, and Taylor all had a common purpose (obtaining, using, and distributing illegal drugs) and occurred during the period of the conspiracy (January 1998 to January 1994). Regularity, similarity, and temporal proximity were all present. Consequently, the district court's finding was not clearly erroneous.

C.

The district court gave Frazier a two-level adjustment under USSG § 3B1.1(c) based on Glenn's grand jury testimony that Frazier directed him to travel to Philadelphia to obtain cocaine. Because his dealings with Glenn were relevant conduct, the adjustment was not clearly erroneous.

D.

In his written statement to the probation officer, Frazier denied ever distributing cocaine, despite his conviction of two cocaine charges and his guilty plea to a third count of cocaine distribution. The district court denied him an adjustment for acceptance of responsibility. USSG § 3E1.1. Frazier argues that he was penalized for exercising his right to a trial. However, denial of the adjustment is not a penalty, United States v. Frazier, 971 F.2d 1076, 1087 (4th Cir. 1992), cert. denied, 506 U.S. 1071 (1993). A defendant who insists on a trial may obtain the adjustment only if he went to trial to preserve issues unrelated to factual guilt. United States v. Holt, 79 F.3d 14, 17 (4th Cir. 1996). Frazier was not in this category and the district court did not clearly err in denying him the adjustment.

Finding no reversible error, we affirm the convictions and sentences appealed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

13