Karl Quinton Chandler, the appellant, was convicted of the possession of heroin and was sentenced to 10 years' imprisonment. The appellant contends that all the evidence against him was the result of the warrantless interception by the police of his conversations over a cordless telephone and that, therefore, that evidence should have been suppressed. He specifically argues that the interception of his conversations on his cordless telephone violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510-2521; Article 1, § 5, Constitution of Alabama 1901; and §§13A-11-30 and 13A-11-31, Code of Alabama 1975.
Evidence presented at the suppression hearing and the trial in this case revealed the following: Florence Police Officer Bennie Johnson's patrol car was equipped with a Bearcat, Realistic, or Uniden radio scanner that Officer Johnson had purchased privately from either a Wal-Mart discount store or a Radio Shack electronics store. The scanner allows its user to monitor a number of radio frequencies. Officer Johnson testified that he had programmed the scanner to a radio frequency commonly used by cordless telephones so that he could listen to cordless telephone conversations. On March 17, 1994, at 12:46 a.m., Officer Johnson was patrolling within a block of the appellant's residence, randomly listening to the scanner when he overheard a conversation between the appellant and the appellant's brother implicating the appellant in drug-dealing activity. Officer Johnson then activated the police-issue video camera in his patrol car and, through the audio-recording device on the camera, *Page 1020 
recorded additional conversations between the appellant and his brother. As a result of these overheard conversations and the recordings, an investigation was initiated that resulted in the appellant's arrest on drug trafficking charges. A grand jury subsequently indicted the appellant for unlawful possession of heroin, and a jury found the appellant guilty of that offense.
 I.
The appellant first argues that Officer Johnson's interception of his cordless telephone conversations violated the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510-2521. He argues that the evidence resulting from the warrantless interception should have been excluded.
"Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronics Communications Privacy Act of 1986, forbids the warrantless interception of wire, oral, and electronic communications. 18 U.S.C. § 2511." In reAskin, 47 F.3d 100, 102 (4th Cir.), cert. denied, ___ U.S. ___,116 S.Ct. 382, 133 L.Ed.2d 305 (1995). "Title III includes an exclusionary rule; illegally intercepted communications may not be introduced as evidence in any trial or hearing. 18 U.S.C. § 2515."United States v. Smith, 978 F.2d 171, 175 (5th Cir. 1992), cert. denied, 507 U.S. 999, 113 S.Ct. 1620,123 L.Ed.2d 179 (1993). Title III's exclusionary rule applies to proceedings in state courts as well as to those in federal courts. See Ex parte O'Daniel, 515 So.2d 1250 (Ala. 1987) (holding that Title III applies to spousal wiretapping); Hudsonv. Hudson, 534 So.2d 617 (Ala.Civ.App. 1988) (followingO'Daniel).
The appellant concedes that at the time his case arose, as was the case in Askin, supra, the radio portion of cordless telephone communications was expressly excluded from Title III's definitions of "wire communications" and "electronic communications" and was therefore excluded from Title III's ban on the warrantless interception thereof. Askin, 47 F.3d at 102; see §§ 2510(1) (defining "wire communication") and 2510(12)(A) (defining "electronic communication").[1] As to whether cordless telephone communications fit within Title III's coverage of "oral communications," we note:
 "Virtually every court to have faced the question of whether cordless phone conversations were oral communications under § 2510(2) answered in the negative. See Smith, 978 F.2d at 175-76; Tyler v. Berodt, 877 F.2d 705, 706-07 (8th Cir. 1989), cert. denied, 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990); United States v. Carr, 805 F. Supp. 1266, 1271-72 (E.D.N.C. 1992); Edwards v. Bardwell, 632 F. Supp. 584, 589 (M.D.La. 1986). Moreover, Congress has always addressed the question of cordless telephone conversations as wire or electronic, not oral, communications. See e.g., 18 U.S.C. § 2510(1), 2510(12)(A); Pub.L. No. 103-414, § 202(b), 108 Stat. 4279 (1994) (amending § 2511(4)(b) of Title III, which provides penalties for the interception of certain 'wire or electronic communication,' to include cordless telephone communication)."
Askin, 47 F.3d at 102-03. See also Smith, supra, 978 F.2d at 175 ("The Senate Report on the 1986 amendments [to Title III] explained that '[i]n essence, an oral communication is one carried by sound waves, not by an electronic medium.' S.REP. No. 541 99th Cong., 2d Sess. 13 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3567.").
Because the radio portion of cordless telephone communications was expressly excluded from the definition of wire and electronic communications under Title III's coverage at the time the appellant's case arose and because the appellant's cordless telephone conversations were not "oral communications," the appellant's claim that the interception of his cordless telephone conversations violated Title III is without merit. *Page 1021 
 II.
The appellant next argues that even if his cordless telephone conversations were not protected by Title III, he nonetheless had a reasonable expectation of privacy in those conversations under the Alabama Constitution; therefore, he says, the evidence arising from the warrantless interception of his conversations was due to be excluded.
Article I, § 5, Constitution of Alabama 1901, states:
 "That the people shall be secure in their persons, houses, papers, and possessions from unreasonable seizures or searches, and that no warrants shall issue to search any place or to seize any person or thing without probable cause, supported by oath or affirmation."
The language of Article I, § 5, of the Alabama Constitution is substantially similar to the language of theFourth Amendment to the United States Constitution, and the case law addressing the scope of Article I, § 5, relative to the scope of the Fourth Amendment has consistently indicated that the protection afforded by Article I, § 5, is no greater than that provided by the Fourth Amendment. See, e.g., Oswalt v. State, [Ms. CR-93-0522, September 9, 1994], ___ So.2d ___ (Ala.Cr.App. 1994); Hagood v. Town of Town Creek, 628 So.2d 1057
(Ala.Cr.App. 1993); Skipper v. State, 387 So.2d 261
(Ala.Cr.App. 1980). It appears that Alabama's appellate courts have never addressed the issue of one's expectation of privacy in cordless telephone communications in any context. Therefore, when considering the appellant's argument that he had a reasonable privacy expectation in his cordless telephone conversations under the Alabama Constitution, we will turn to a highly persuasive Fourth Amendment analysis undertaken by the Fifth Circuit Court of Appeals in United States v. Smith,978 F.2d 171 (5th Cir. 1992), cert. denied, 507 U.S. 999,113 S.Ct. 1620, 123 L.Ed.2d 179 (1993), where the Court of Appeals considered a defendant's claim concerning cordless telephone conversations very similar to the appellant's claim here. We find Smith's Fourth Amendment analysis of the appellant's claim appropriate also because, in his brief to this court and in his contentions at the trial level, the appellant at times conflates his arguments concerning Article I, § 5, withFourth Amendment considerations.
The appellant has drawn our attention to Mozo v. State,632 So.2d 623 (Fla.Dist.Ct.App. 1994), where a Florida court held that the random interception of cordless telephone communications violated two right-of-privacy provisions of the Florida Constitution — Article I, §§ 12 and 23. The holding inMozo, however, was based on unique language in the Florida Constitution specifically including protection for "private communications" and granting Florida citizens "the right to be let alone and free from governmental intrusion." See Article I, §§ 12 and 23, Constitution of Florida. Alabama's Constitution contains no such provisions; therefore, we find the Florida case to be inapposite.
We believe that the Court of Appeals' decision inSmith, supra, 978 F.2d 171, is more pertinent to the circumstances presented by the appellant's case. In Smith, the defendant's neighbor, suspecting that the defendant was involved in break-ins at the neighbor's house, eavesdropped on the defendant's cordless telephone conversations using a Bearcat brand scanner and in the course of doing so discovered that the defendant was a drug dealer. The neighbor conveyed this information to the police, who instructed him to tape-record the defendant's telephone calls and then assisted him in doing so. The intercepted calls and tape recordings led to the arrest of the defendant on drug trafficking charges. The defendant argued that the interception of his cordless telephone conversation intruded upon his reasonable expectation of privacy in those conversations.
After setting forth the historical backdrop of theFourth Amendment, the Court of Appeals in Smith considered the question of one's expectation of privacy in cordless telephone communications:
 "The legal standard that Smith must satisfy in order to show a Fourth Amendment violation is well established. First, he must show that a government activity intruded upon a reasonable expectation of privacy in such a significant way that the *Page 1022 
activity can be called a 'search.' Second, if a search has in fact occurred, Smith must show that the government intrusion was unreasonable given the particular facts of the case. United States v. York, 895 F.2d 1026, 1028 (5th Cir. 1990). In this particular case, the key inquiry is whether the interception of Smith's phone calls constituted a search within the meaning of the Fourth Amendment.
 "The definition of the term 'search' has always been the source of some difficulty in Fourth Amendment jurisprudence. See 1 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment 301 (1987). In general terms, it has been said that a search occurs when the government infringes an expectation of privacy that society is prepared to consider reasonable. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Smith argues that the interception of his cordless phone conversations was a search because he did not know how the cordless phone worked or that his conversations would not be private. However, a subjective expectation of privacy does not, by itself, give rise to Fourth Amendment protection. The expectation of privacy must be one that society is prepared to recognize as reasonable.
 "While it is true that the right to privacy in a personal conversation is generally a reasonable expectation, the actions of the parties to the conversation may reduce this expectation to the point that it is no longer 'reasonable.' See, e.g., United States v. Burns, 624 F.2d 95 (10th Cir.), cert. denied, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (holding that there was no reasonable expectation of privacy for a loud conversation in a hotel room that could be heard in adjoining rooms). 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967).
 "The Supreme Court has noted that what is really involved in Fourth Amendment analysis is our 'societal understanding' about what deserves 'protection from government invasion.' Oliver v. United States, 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984). In any consideration of the 'societal understanding' about the privacy expectations of cordless phone users, it is perhaps instructive to note the important role that all forms of telecommunication, including various cordless systems, play in today's society. As early as 1967, the Supreme Court recognized the 'vital role' that the telephone plays in modern communications. Katz, 389 U.S. at 352, 88 S.Ct. at 512. No one would dispute that the importance of telecommunications today has outstripped anything imagined twenty five years ago. In recent years, one of the fastest growing areas in the field of telecommunications has been 'wireless' technology. See Andrew Kupfer, Phones That Will Work Anywhere, Fortune, Aug. 24, 1992, at 100. Cordless phones, in particular, are threatening to outstrip sales of traditional land line telephones. Today, nearly half of the 95 million U.S. households use cordless telephones, and more than 16 million new cordless phones are expected to be sold this year. Anthony Ramirez, More Range, Less Static in New Cordless Phones, N.Y. Times, Sept. 12, 1992, § 1, at 11. If, as some experts predict, we are moving inexorably toward a completely cordless telephone system, the decision as to whether cordless telephone conversations are protected by the Fourth Amendment may ultimately determine whether any telephone conversation is protected by the Fourth Amendment.
 "With this sobering thought in mind, we now turn to the application of established Fourth Amendment principles to the subject of cordless telephones. From a Fourth Amendment standpoint, the problem with cordless phones is figuring out how to characterize them. Are they more like traditional telephones or more like radio transmitters? This difference is important because the Fourth Amendment clearly protects communications carried by land-based telephone lines. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576
(1967). On the other hand, pure radio communications are afforded no *Page 1023 
such protection because '[b]roadcasting communications into the air by radio waves is more analogous to carrying on an oral communication in a loud voice or with a megaphone than it is to the privacy afforded by a wire.' United States v. Hall, 488 F.2d 193, 196 (9th Cir. 1973); see Goodall's Charter Bus Serv., Inc. v. San Diego Unified Sch. Dist., 125 Cal.App.3d 194, 178 Cal.Rptr. 21
(1981).
 "Cordless phones are difficult to characterize because they do not fit neatly into either category. In one sense, the cordless telephone is just what the name implies, a telephone. It looks and sounds like a normal land line telephone. When you use a cordless phone, you dial a telephone number and talk to the party on the other end of the line. In actual operation, however, the cordless phone actually uses a radio signal. The typical cordless phone consists of a base unit, attached to the land-based telephone line, and a mobile unit which transmits and receives the radio signals that carry the actual conversation to and from the base unit. See generally Alan Gadlin, Note, Title III Protection for Wireless Telephones, 1985 U.Ill.L.Rev. 143 (1985); Kelley K. Hwang, Note, The Admissibility of Evidence Obtained by Eavesdropping on Cordless Telephone Conversations, 86 Colum.L.Rev. 323 (1986).
 "One of the first cases to deal specifically with the question of whether a user of a cordless phone has a reasonable expectation of privacy was State v. Howard, 235 Kan. 236, 679 P.2d 197 (1984). In Howard, as in most of the cases dealing with the interception of cordless phone communications, the precise issue before the court was whether the interception of cordless phone conversations fell under Title III. See also Tyler v. Berodt, 877 F.2d 705 (8th Cir. 1989); State v. Delaurier, 488 A.2d 688 (R.I. 1985); State v. Smith, 149 Wis.2d 89, 438 N.W.2d 571 (1989). The key inquiry in each of these cases was whether cordless phone conversations had a reasonable expectation of privacy so as to fit within the statutory definition of 'oral communications.' Although we have concluded that both the plain text of Title III and the legislative history of the 1986 amendments show that Congress never intended to include cordless phone conversations within the definition of 'oral communication,' the analysis of the reasonableness found in the pre-amendment cases dealing with Title III is virtually identical to the appropriate inquiry under the Fourth Amendment.
 "In Howard, a neighbor overheard the defendant's cordless telephone conversation on a standard AM/FM radio. The conversations indicated that Howard was involved in drug trafficking so the neighbor recorded several conversations and provided them to the police. Based primarily upon the tape recorded conversations, police obtained a search warrant for the Howard's residence where they discovered 'certain narcotic drugs.' Howard, 679 P.2d at 199.
 "At a hearing on Howard's motion to suppress, an employee of the manufacturer of Howard's cordless phone testified 'as to the nature and operational dynamics' of the phone. Id. The witness testified that, because the cordless phone utilized a commercial radio frequency to communicate with the base unit, any standard FM radio could pick up conversations from the phone. The phone also had a range of up to 100 feet, depending on conditions. Further, this cordless phone, as well as other cordless phones in use at the time had a preset frequency. Any other cordless phone set to the same frequency could also pick up the same conversations. The only way to change the frequency of the phone was to return it to the factory for modification. Id.
 "After hearing this testimony, the Howard court held that the defendant could have had no reasonable expectation of privacy in his cordless phone communications because they could be heard by anyone listening on an ordinary radio receiver. As a result, the communications could not be considered 'oral communications' under the pre-1986 version of Title III. See also Delaurier, 488 A.2d at 694 (holding that there could be no reasonable expectation of privacy for conversations 'put on the air voluntarily, and accessible to anyone possessing *Page 1024 
an ordinary AM radio'); Smith, 438 N.W.2d at 573 (holding that user could have no reasonable expectation of privacy for conversations over a cordless phone where facts showed that phone had a range of over 700 feet and 'was subject to ready interception by standard radio scanners, radio receivers, or other cordless telephones').
 "The essential holding of Howard — and of each of the other cases to consider the issue — was that, based upon the particular characteristics of the cordless phone in question, there could have been no reasonable expectation of privacy in the cordless phone transmissions due to the ease with which they could be monitored. In other words, although the individual communication at issue would normally be subject to Fourth Amendment protection, the defendants had 'knowingly exposed' the communication to the public by using a technology that could be so easily intercepted. Nonetheless, these cases should not be read to stand for the proposition that a communication loses a Fourth Amendment protection simply because it is not transmitted by wire. There is nothing magical about a telephone line. The significant difference between land line telephone conversations and conversations carried out over early versions of the cordless phone was the ease with which cordless phone conversations could be intercepted. It was so easy to overhear early cordless phone conversations that a user could never have a reasonable expectation of privacy.
 "While we completely agree with these earlier decisions, it is important to note that since those cases were decided cordless technology has continued to evolve. Today's cordless phones are very different from the models at issue in Howard and Delaurier. The effective range of cordless phones varies greatly from model to model; many are limited to a range of about sixty feet, barely beyond the average house or yard. Obviously it is more reasonable to expect privacy from a broadcast that cannot be heard outside your own property than it is to expect privacy for a broadcast that covers a whole neighborhood. Cordless phones are also no longer 'pre-set' to one frequency. Instead, most cordless phones sold today can monitor all available frequencies and automatically select one that is unused. This greatly reduces the chance that a cordless phone will pick up conversations from other cordless phones. Today's cordless phones broadcast on radio frequencies not utilized by commercial radio so that conventional radios can no longer pick up cordless phone communication. Although radio scanners — like the one used by Mr. Varing — can still monitor most cordless phones, only a small percentage of people own such scanners. Surely the reasonableness of an expectation of privacy becomes greater when the conversation can only be intercepted using specialized equipment not possessed by the average citizen. Finally, cordless phones now appearing on the market actually scramble the radio signal so that even radio scanners cannot intercept the communication.
 "Courts should bear in mind that the issue is not whether it is conceivable that someone could eavesdrop on a conversation but whether it is reasonable to expect privacy. See Florida v. Riley, 488 U.S. 445, 453-54, 109 S.Ct. 693, 698, 102 L.Ed.2d 835 (1989) (O'Connor, J., concurring). No matter how technologically advanced cordless communication becomes, some people will always find a way to eavesdrop on their neighbors. However, '[t]he fact that [Listening] Toms abound does not license the government to follow suit.' United States v. Kim, 415 F. Supp. 1252, 1256 (D.Haw. 1976). Although we express no opinion as to what features or circumstances would be necessary to give rise to a reasonable expectation of privacy, it should be obvious that as technological advances make cordless communications more private at some point such communication will be entitled to Fourth Amendment protection. Given this conclusion, it should be equally obvious that it is not enough for a trial court to conclude that interception of a conversation does not implicate Fourth Amendment concerns simply because it is carried by a 'cordless' phone. Application of the Fourth Amendment in a given case will *Page 1025 
depend largely upon the specific technology used, and a trial court must be prepared to consider that technology in a hearing on a motion to suppress.
 "This is not a novel announcement. Any determination of the reasonableness of an individual's expectation of privacy is necessarily fact intensive. It is often said that 'occupants who leave window curtains or blinds open expose themselves to the public's scrutiny of activities within that part of the house that can be seen from outside the premises.' United States v. York, 895 F.2d 1026, 1029 (5th Cir. 1990). Yet this does not mean that the Fourth Amendment never applies when the curtains are open.
 "In United States v. Kim, 415 F. Supp. 1252
(D.Haw. 1976), FBI agents had used an 800 millimeter telescope to observe activities inside Kim's high-rise apartment from a quarter of a mile away. There were no buildings in the line of sight located significantly closer. The district court categorically rejected the government's argument that because Kim left his curtains open his activities were in plain view. Id. at 1256. In spite of the fact that the curtains were open, the circumstances clearly established that Kim nonetheless had a reasonable expectation of privacy in his home. Accord United States v. Taborda, 635 F.2d 131, 138 (2d Cir. 1980); Wheeler v. State, 659 S.W.2d 381, 389-90 (Tex.Crim.App. 1982); see also National Treasury Employees Union v. Von Raab, 816 F.2d 170, 175 (5th Cir. 1987) ('An individual . . . may open the curtains of his home to the view of unenhanced vision without consenting to the view of a telescope.').
 "Likewise, in spite of the fact that a defendant uses a cordless phone, the circumstances may show that he also has a reasonable expectation of privacy. When faced with a motion to suppress intercepted cordless phone communications, a trial court must do more than simply conclude that a defendant had no expectation of privacy because he used a cordless phone; instead, the trial court must be prepared to consider the reasonableness of the privacy expectation in light of all the particular circumstances and the particular phone at issue. Granted, it would be easier to apply a general rule that it either is or is not reasonable to expect privacy for cordless telephone communications. The creation of such a general rule, however, is beyond the proper role of the judiciary. 'Courts are as a general matter in the business of applying settled principles and precedents of law to the disputes that come to the bar.' James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534, 111 S.Ct. 2439, 2442, 115 L.Ed.2d 481 (1991). Having said that, we now turn to an application of the law to the specific facts and circumstances present in this case.
 "Smith argued before the trial court that the interception of his cordless telephone conversations violated his Fourth Amendment rights. However, he introduced no evidence that could support this argument. His arguments before the trial court, and the bulk of his arguments before this Court, all revolved around the fact that Smith did not know that his conversations would not be private. Yet, subjective expectations of privacy are not enough to give rise to Fourth Amendment protection. The real question is whether Smith's subjective expectation of privacy is one that society is prepared to recognize as reasonable. As discussed earlier, the reasonableness of any expectation of privacy for a cordless phone conversation will depend, in large part, upon the specific telephone at issue. As the proponent of the motion to suppress, the burden was on Smith to show that the evidence in this case was obtained in violation of his Fourth Amendment rights. Yet Smith introduced absolutely no evidence — such as the phone's frequency or range — that would tend to show that his subjective expectation of privacy was reasonable. Our discussion in this case has gone into great detail because it appears from the record that the trial court incorrectly assumed that there could never be a reasonable expectation of privacy for a cordless phone communication. Even under a correct application of the law, however, Smith failed to carry his burden of showing that his Fourth Amendment rights were violated. *Page 1026 Smith's motion to suppress was properly denied."
Smith, 978 F.2d at 176-81 (emphasis added). See also Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment
§ 2.2(e) (3d ed. 1996) ("interception of the radio portion of conversations over a cordless phone is not a Fourth Amendment search, though it could be a search under special circumstances (and could more generally be a search 'as technological advances make cordless communications more private')"), quotingSmith, supra at 180.
Here, the appellant presented no evidence to the trial court of the particular characteristics of the cordless telephone in question that would prevent the easy interception of conversation thereon. Accordingly, the appellant failed to carry his burden of showing that his rights under either theFourth Amendment to the United States Constitution or ArticleI, § 5, of the Alabama Constitution were violated. We therefore find no error on the part of the trial court in denying the appellant's motion to suppress on this ground.
 III.
The appellant also argues that the interception of his cordless telephone conversations violated §§ 13A-11-30 and13A-11-31, Code of Alabama 1975, Alabama's criminal eavesdropping statutes, and that the evidence arising from the warrantless interception of these conversations therefore should be excluded.
Section 13A-11-31 provides as follows:
 "(a) A person commits the crime of criminal eavesdropping if he intentionally uses any device to eavesdrop, whether or not he is present at the time."
The term "eavesdrop" is defined in § 13A-11-30 as follows:
 "(1) EAVESDROP. To overhear, record, amplify or transmit any part of the private communication of others without the consent of at least one of the persons engaged in the communication, except as otherwise provided by law."
Because it is apparent from the language of §§ 13A-11-30 and13A-11-31 that the overheard communication must be "private" in order to constitute criminal eavesdropping, the question is begged in the present case: Were the cordless phone conversations in which the appellant engaged ones in which the appellant had a reasonable expectation of privacy? Because we held in Part II of this opinion that the appellant failed to show that he had a reasonable expectation of privacy in his cordless phone conversations, we conclude that the appellant has failed to show how the provisions of §§ 13A-11-30 and13A-11-31 apply in his case.
Furthermore, §§ 13A-11-30 and 13A-11-31 contain no exclusionary rule providing for the per se prohibition against use of evidence obtained in violation of the statutes. As the attorney general correctly points out in his brief to this court, the Fourth Amendment exclusionary rule does not require exclusion of illegally obtained evidence, but only that evidence that is found as a result of a violation of theFourth Amendment. See Oliver v. United States, 466 U.S. 170,104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); Hester v. United States,265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). Consequently, even if the interception in this case constituted criminal eavesdropping, and we do not hold that it does, the conversation intercepted would not be rendered inadmissible by that fact.
 IV.
The appellant contends that the trial court erred in not releasing him on bond pending appeal. " 'Under the laws and practice in Alabama, habeas corpus is the proper remedy to challenge either the denial or excessiveness of bail.' Clay v.State, 561 So.2d 1116, 1118 (Ala.Cr.App. 1990)." Burks v. State,600 So.2d 374, 381 (Ala.Cr.App. 1991). This is the direct appeal of the appellant's conviction, not an appeal of the denial of a petition for a writ of habeas corpus. Since the record does not contain a petition for a writ of habeas corpus, this issue is procedurally barred from appellate review. Pate v. State,601 So.2d 210, 213 (Ala.Cr.App. 1992) ("An issue raised for the first time on appeal is not subject to review because it has not been properly preserved and presented"). *Page 1027 
Moreover, the issue of the appellant's appeal bond has already been litigated, and we will not revisit it. On September 14, 1995, the appellant filed a petition for a writ of habeas corpus in this Court requesting an appeal bond, which we denied on October 11, 1995. Ex parte Chandler, [CR-94-2334, October 11, 1995] ___ So.2d ___ (Ala.Cr.App. 1995) (table).
For the foregoing reasons, the judgment is hereby affirmed.
AFFIRMED.
All Judges concur.
[1] "Congress has since extended Title III's coverage to include the radio portion of cordless communications by simply striking the above exceptions from §§ 2510(1) and 2510(12)(A). See Communications Assistance for Law Enforcement Act, Pub.L. No. 103-414, § 202(a), 108 Stat. 4279 (1994)." Askin, 47 F.3d at 102.