KELLUM, Judge.
Pursuant to a negotiated plea agreement, the appellant, Quinneshia Chemise Cabbie, pleaded guilty to one count of conspiracy to distribute marijuana, a violation of §§ 13A-12-204 and 13A-12-211, Ala.Code 1975. The circuit court sentenced Cabbie to 15 years’ imprisonment; the sentence was split, and she was ordered to serve 3 years’ imprisonment, with the balance suspended, followed by 5 years’ supervised probation. The circuit court ordered Cabbie to pay $50 to the Crime Victims Compensation Fund, a fine of $1,000 pursuant to the Drug Demand Reduction Assessment Act, $100 to the Alabama Forensic Services Trust Fund, and court costs.
The record indicates that in 2007 Eddie Spivey,[1] John Hurst, and Becky Spark-man, agents with the United States Drug Enforcement Agency (“DEA”) Montgomery Task Force (“Montgomery DEA Task Force”) as well as DEA Special Agents Neill Thompson, Brett Hamilton, and Devin L. Whittle and others began investigating a drug distribution organization responsible for distributing hundreds of pounds of cocaine and marijuana in Montgomery and surrounding cities. In connection with this investigation, D’Andre Stokes was arrested on April 5, 2007, in a sting operation in Auburn after he attempted to purchase five kilograms of cocaine from an undercover DEA agent.
Four months later, on August 19, 2007, a DEA confidential informant (hereinafter referred to as “confidential informant no. 1”) told Special Agent Thompson that Cabbie and her boyfriend, Adarryl Brown, had contacted him about finding a cocaine supplier. Specifically, Cabbie told confidential *858 informant no. 1 that Brown and Stokes had had a disagreement over the prices that Stokes was charging Brown for cocaine. Cabbie asked confidential informant no. 1 to contact an individual named Kelvin Artis so that Brown could purchase cocaine directly from Artis. Cabbie offered to sell confidential informant no. 1 “any amount” of cocaine confidential informant no. 1 wanted to buy.
On December 14, 2007, a different DEA confidential informant who had been arrested for drug distribution in Montgomery in April 2007 (hereinafter referred to as “confidential informant no. 2”) told Montgomery DEA Task Force Agent Spi-vey that, through his association with a Montgomery drug dealer named Gerrick Brown, he had learned that Gerrick Brown’s source of cocaine was Clarence Donya Hicks, Jr., and his brother Deondra Conrad Hicks, and that the Hicks brothers were the leaders of a large drug-trafficking organization operating in Montgomery.
On February 29, 2008, Montgomery DEA Task Force Agents Spivey and Hurst conducted a proffer interview with Stokes. During the interview, Stokes stated that Brown and Gerrick were brothers and that Gerrick got his cocaine from Donya Hicks who, in turn, got the cocaine from a black male in Atlanta who went by the name of “Lil John.” Stokes stated that he believed that Hicks’s brother Deondra transported the cocaine he received from “Lil John” from Atlanta to Montgomery by way of a tractor trailer.
On May 19, 2009, Agents Spivey and Hurst interviewed confidential informant no. 2 again, at which time confidential informant no. 2 told Agents Spivey and Hurst that, in addition to transporting cocaine, Donya Hicks also frequently transported marijuana from Atlanta to Montgomery for Gerrick. Through his association with Gerrick, confidential in-fox-mant no. 2 developed a relationship with Donya Hicks and learned how the drug-trafficking organization operated.
As the investigation continued, DEA Special Agent Whittle and Montgomery DEA Task Force Agent Spivey met with confidential informant no. 2 regarding information about Gerrick. During the meeting, confidential informant no. 2 stated that he had had conversations with Gerrick over a cellular telephone with a telephone number assigned to Gerrick. At some point before March 1, 2010, an analysis of the pen register and telephone tolls for that number — a cellular telephone used by Gerrick — showed that from February 7, 2009, to February 8, 2010, that cellular telephone had been in contact with another telephone number in Alabama a total of 281 times. At the time, the Alabama telephone number was billed to Cabbie’s physical address.
On March 1, 2010, DEA Special Agent Whittle, through the United States Attorney for the Middle District of Alabama, applied to the United States District Court for a wiretap on Gerrick’s cellular telephone. On March 1, 2010, United States District Judge W. Keith Watkins signed an order authorizing the interception of wire communications for that cellular telephone number. The March 1, 2010, wiretap order listed Cabbie, among others, as a target interceptee.
On March 2, 2010, a telephone call was intercepted on the wiretap between the cellular telephone number used by Gerrick and an Atlanta area cellular telephone number used by Donya Hicks. During the telephone call, Hicks asked Gerrick for a quarter of a pound of a type of marijuana the two of them referred to as “bubble.” (C. 148.) A second call was subsequently intercepted the same day on the wiretap between the cellular telephone number *859 used by Gerrick and the Atlanta area cellular telephone number used by Donya Hicks. During that telephone call, Hicks told Gerrick that Hicks kept “a pound or two” of marijuana at' Lakesha Moore’s house. (C. 150.) Later in the investigation, an analysis of the pen register and telephone tolls for Moore’s cellular telephone revealed that, between February 1, 2010, and February 18, 2010, Moore’s cellular telephone had been in contact with Hicks’s cellular telephone a total of 443 times.
On March 3, 2010, another telephone call was intercepted on the wiretap between Gerrick and the Atlanta area cellular telephone number used by Hicks. In the call, Hicks informed Gerrick that Thomas Shir-rell and Buford Mercel had broken into Amber Mann’s house and had stolen two pounds of marijuana Hicks had stashed there. Later in the investigation, an analysis of the pen register and telephone tolls for Mann’s cellular telephone revealed that, between February 1, 2010, and March 4, 2010, Mann’s cellular telephone had been in contact with Hicks’s cellular telephone a total of 369 times.
On March 30, 2010, DEA Special Agent Whittle made a separate application for a wiretap on the cellular telephone number belonging to Hicks. The application expressly referenced the fact that the Montgomery DEA Task Force had already obtained a wiretap on Gerrick’s cellular telephone number, and that information gathered from that wiretap and from other sources had led agents to believe that they also needed a wiretap on Hicks’s cellular telephone. On March 30, 2010, United States District Judge W. Keith Watkins signed an order authorizing the interception of wire communications for Hicks’s cellular telephone number.
After conducting an extensive investigation which included wiretaps on both Ger-rick’s and Hicks’s telephone numbers, law-enforcement agents working the case concluded that the amount of marijuana to which Cabbie was linked did not meet the minimum threshold necessary for the Montgomery DEA Task Force to pursue federal charges against Cabbie. The record indicates that the United States Attorney for the Middle District of Alabama subsequently sought, under 18 U.S.C. § 2517, authorization from the federal court to release to the Montgomery County District Attorney the information gathered on Cabbie from the federal wiretaps on Hicks’s cellular telephone number. On or before April 26, 2010, the federal court issued an order pursuant to 18 U.S.C. 2518(8)(b) authorizing the release to the Montgomery County District Attorney of the information gathered on Cabbie from the federal wiretaps on Hicks’s cellular telephone. Thereafter, both the information from the wiretap on Gerrick’s cellular telephone and the information from the wiretap on Hicks’s cellular telephone were turned over to the Montgomery County District Attorney for potential state court prosecution. Cabbie was subsequently indicted for conspiracy to traffic in marijuana.
Before pleading guilty to conspiracy to distribute marijuana, Cabbie moved to suppress evidence obtained as a result of the federal wiretaps. Cabbie filed two motions to suppress the wiretap evidence. In her first motion, Cabbie argued that the information gathered from the federal wiretaps pursuant to a federal-wiretap warrant was inadmissible in an Alabama state court. Specifically, Cabbie asserted that Alabama law prevents the admission of wiretap evidence under § 13A-11-30 et seq., Ala.Code 1975, and that no exception existed that would allow the admission of the wiretap evidence at trial. In her sec *860 ond motion, Cabbie argued that the wiretap evidence should be suppressed because, she argued, the affidavit submitted by DEA Special Agent Whittle was insufficient to support the issuance of the wiretaps. Specifically, Cabbie argued that the affidavit contained only “generalizations and boilerplate recitations regarding why traditional investigative techniques have not sufficed” and that, on that basis, it did not adequately demonstrate the necessity for a wiretap. (C. 198.) Finally, Cabbie argued that the district court’s order authorizing the wiretap was flawed because the order did not include a specific statement of the particular state offenses to which it related. The circuit court denied both motions to suppress the wiretap evidence.
After the circuit court denied her motions to suppress the wiretap evidence, Cabbie moved to prevent the State from using sealed documents during its prosecution of Cabbie. Cabbie contended that the sealed documents, i.e., the information gleaned from the wiretaps, were properly released by order of United States District Judge Watkins for Hicks’s cellular telephone but were not properly released by federal order for Gerrick’s cellular telephone number. The circuit court denied Cabbie’s motion.
Cabbie subsequently pleaded guilty to conspiracy to distribute marijuana. Before pleading guilty, Cabbie reserved for appellate review the circuit court’s denial of her motion to suppress the federal wiretaps as evidence in her case. Specifically, Cabbie reserved “issues concerning the admissibility of the federal wiretaps as evidence in [her] case.” (C. 243.) This appeal followed.
I.
Cabbie contends that the circuit court erred in not suppressing the evidence obtained as a result of the federal wiretaps. Specifically, Cabbie argues that wiretapping is illegal in Alabama as “eavesdropping” under § 13A-11-31, Ala.Code 1975, and, therefore, that evidence gleaned from a federal wiretap is inadmissible in state court.
“This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute. See State v. Hill, 690 So.2d 1201, 1203 (Ala.1996); State v. Otwell, 733 So.2d 950, 952 (Ala.Crim.App.1999).” State v. Skaggs, 903 So.2d 180, 181 (Ala.Crim.App.2004). In the instant case, the facts are uncontested; the only issue is the circuit court’s application of the law to those facts. Therefore, this Court affords the circuit court’s ruling no presumption of correctness.
In 1968, Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act (“the Wiretap Act”), 18 U.S.C. §§ 2510-2521, to address certain Fourth Amendment problems inherent in wiretapping. See Berger v. New York, 388 U.S. 41,’ 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The original act addressed only the intentional interception of wire or oral communications. In light of technological developments and changes in the structure of the telecommunications industry, Congress amended Title III and adopted the Electronic Communications and Privacy Act of 1986 (“ECPA”) to prohibit the intentional interception of electronic communications. Electronic communication includes “any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electro-magnetic, photoelectronic or photooptical system that affects interstate or foreign commerce.” 18 U.S.C. § 2510(12). Thus, electronic communica *861 tions include cellular-telephone service. See United States v. Carrazana, 921 F.2d 1557, 1562 (11th Cir.1991); In re Application for an Order Authorizing Disclosure of Location Information of a Specified Wireless Telephone, 849 F.Supp.2d 526 (D.Md.2011).
Title 18, United States Code, § 2516(2) of the Wiretap Act and ECPA allows individual states to enact concurrent state legislation governing the interception of wire, oral, or electronic communications. The statute recognizes that a state may either adopt procedures and standards that are more restrictive than those of the federal statute or prohibit wiretapping altogether. See United States v. Marion, 535 F.2d 697, 702 n. 9 (2d Cir.1976). Therefore, state statutes may narrow the scope of permissible wiretapping, but may not broaden the scope of permissible wiretapping beyond that contemplated by the federal statute. To do otherwise would run afoul of the Supremacy Clause. U.S. Const. Art. VI, cl. 2.
The Alabama Legislature has enacted legislation criminalizing certain offenses against privacy including, among others, criminal eavesdropping, see § 13A-11-S1, Ala.Code 1975. “A person commits the crime of criminal eavesdropping if he intentionally uses any device to eavesdrop, whether or not he is present at the time.” § 13A-11-31, Ala.Code 1975. “Eavesdrop” has been defined by our legislature as follows: “To overhear, record, amplify or transmit any part of the private communication of others without the consent of at least one of the persons engaged in the communication, except as otherwise provided by law.” § 13A-11-30(1), Ala.Code 1975 (emphasis added). The Commentary following this statute explains, in pertinent part:
“Federal law has become quite pervasive in this area with ... Title III, Omnibus Crime Control and Safe Streets Act of 1968 (Pub.L. 90-351, 82 Stat. 211, 18 U.S.C. § 2510 et seq.), which also applies to states. The Criminal Code continues this coverage. It prohibits eavesdropping, defined in § 13A-11-30(1) as overhearing, recording, amplifying or transmitting any part of the private communication of others, except as otherwise provided by law. The latter phrase incorporates by reference any lawful regulations that may be promulgated affecting the monitoring of messages by communications carriers, and any surveillance under court order authorized by law.”
In examining the above statutes, we keep in mind the following principles of statutory construction:
“ ‘The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301, 1305 (Ala.1991). “Where a statutory pronouncement is distinct and unequivocal, there remains no room for judicial construction and the clearly expressed intent of the legislature must be given effect.’ Ex parte Holladay, 466 So.2d 956, 960 (Ala.1985) (citing Dumas Bros. Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534 (Ala.1983)).”
Ex parte Soto, 991 So.2d 691, 692 (Ala.2008).
Although our research reveals no Alabama caselaw addressing whether a federal wiretap like the one at issue in the instant case constitutes “eavesdropping” in violation of § 13A-11-31, Ala.Code 1975, the question of the admissibility of federal wiretaps in Alabama can be resolved by reading the plain language of the applica *862 ble statutes in conjunction with the Commentary cited above.[2] Section 13A-11-30(1), Ala.Code 1975, and the Commentary following that statute indicate that the Alabama Legislature intended to create an exception in § 13A-11-30 et seq. to allow for the application of federal law. By creating an exception in § 13A-11-30 in the definition of eavesdropping and permitting the collection of private communication “as otherwise provided by law,” the legislature intended to permit the collection of electronic communication as provided for under federal law, including the lawful regulations for federal wiretaps found in the Wiretap Act and the ECPA. Therefore, we do not agree with Cabbie’s contention that wiretapping is illegal in Alabama as “eavesdropping” under § 13A-11-31, Ala. Code 1975.
II.
Cabbie also contends that the circuit court erred in not suppressing the evidence obtained as a result of the federal wiretaps because, she argues, the affidavits produced by DEA Special Agent Whittle for wiretaps on Gerrick’s and Hicks’s telephone numbers were insufficient under 18 U.S.C. § 2518(1) to support the issuance of the wiretaps. Specifically, Cabbie argues that the government failed to meet its burden of showing necessity; failed to show that traditional investigative procedures were unsuccessful; and failed to provide specific facts that relate to the specific offenses for which the wiretap was sought. Regarding the latter contention, Cabbie maintains that the specific facts provided in the affidavits and, in turn, the district court’s orders authorizing the wiretaps, related only to federal violations and not to any crimes under Alabama law that Cabbie was charged with violating.
Title 18, United States Code, Section 2515 provides:
“Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and *863 no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.”
Title III of the Wiretap Act allows an “aggrieved person”[3] to move to suppress the contents of intercepted oral or wire communications, or evidence derived from such communications, obtained in violation of the statute. An aggrieved person may challenge the use of such evidence at trial on the grounds that:
“(i) the communication was unlawfully intercepted;
“(ii) the order of authorization or approval under which it was intercepted was insufficient on its face; or
“(iii) the interception was not made in conformity with the order of authorization or approval.”
18 U.S.C. § 2518(10)(a).
Title 18, United States Code, § 2518(l)(c), requires each application for interception of electronic communications to provide “a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.” 18 U.S.C. § 2518(l)(c). This mandatory explanation of other investigative procedures in an electronic surveillance application is “designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.” United States v. Kahn, 415 U.S. 148, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). A comprehensive exhaustion of all possible investigative techniques, however, is not necessary before applying for a wiretap. United States v. Alonso, 740 F.2d 862, 868 (11th Cir.1984). Furthermore, the “partial success of alternative investigative measures ... does not necessarily render electronic surveillance unnecessary.” United States v. Perez, 661 F.3d 568, 581 (11th Cir.2011). To determine necessity, courts should evaluate wiretap affidavits “in a ‘common sense fashion,’ and ‘the determination of when the Government has satisfied [the statutory] requirement must be made against flexible standards, and ... each case must be examined on its own facts.’ ” United States v. Miller, 431 Fed.Appx. 847, 853 (11th Cir.2011)(quoting United States v. Hyde, 574 F.2d 856, 867 (5th Cir.1978)).
In the wiretap-warrant affidavits, DEA Special Agent Whittle recounted in detail the lengthy, two-year investigation of the alleged drug organization run by Donya Hicks and Gerrick Brown. Special Agent Whittle explained in his affidavit that the wiretaps were necessary at this point in the investigation because (1) the “close knit” nature of the drug organization made it difficult for an undercover agent to infiltrate the organization to the extent necessary to produce the evidence needed to establish the identities and levels of participation of all the relevant participants; (2) confidential informant no. 1 was no longer willing to cooperate in the investigation; (3) confidential informant no. 2 knew only Gerrick Brown within the organization and therefore the government had no source through which it could make the kind of controlled drug purchases that would allow *864 it to establish the identities and levels of participation of the relevant participants in the organization; (4) neither of the confidential informants were able to provide significant information on the Atlanta source of Donya Hicks’s and Gerrick Brown’s drug supply; (5) neither of the confidential informants were able to provide significant information on where, how, and with whom Donya Hicks and Gerrick Brown locally stored cocaine and marijuana; (6) if called before a grand jury, the targets of the investigation and/or their co-conspirators would likely invoke their Fifth Amendment right against self-incrimination; (7) search warrants for the addresses of Donya Hicks and Gerrick Brown would likely produce no evidence, given the use of drug “stash houses,” and would alert both men to the fact that they were being investigated; (8) physical surveillance by law enforcement had been attempted but thwarted by Gerrick Brown’s moving from a house to an apartment and by Donya Hicks’s habit of moving from one girlfriend’s house to another; (9) the use of pen registers and toll analysis, although successful, resulted in mere speculation as to the contents and purpose of the telephone calls; and (10) the tendency of members of drug organizations like that of Donya Hicks and Gerrick Brown to be conscious of what they put in their trash and the fact that Gerrick resided in an apartment complex that had a community dumpster made the possibility of finding sufficient information to prosecute high-level members of the conspiracy unlikely.
The affidavits executed by DEA Special Agent Whittle demonstrate that the request for wiretaps on the cellular telephone numbers registered to Donya Hicks and Gerrick Brown was not an initial step in the investigation against Hicks and Ger-rick but, instead, was made following a lengthy and involved investigation using other investigative resources and techniques available to investigators. The affidavits document both the successes and failures of the various investigative resources and techniques used before requesting wiretaps. Further, the affidavits demonstrate why wiretaps were necessary to advance the investigation. Therefore, contrary to Cabbie’s contention on appeal, the affidavits met the necessity requirement of 18 U.S.C. § 2518(l)(c).
III.
We now turn to Cabbie’s contention that Special Agent Whittle’s affidavits and the district court’s orders were defective because both addressed alleged federal crimes and not the state crime of which she was ultimately convicted. In support of her contention, Cabbie relies solely on United States v. Marion, 535 F.2d 697 (2d Cir.1976), for the proposition that “when a law enforcement officer intercepts oral or wire communications relating to offenses other than those specified in a court order, [the officer] must get subsequent judicial approval to disclose those communications in a criminal proceeding.” (Cabbie’s brief, p. 15.) Cabbie’s reliance on Marion is unavailing. In Marion, the issue before the United States Court of Appeals for the Second Circuit was “whether subsequent judicial approval was required by § 2517(5) before communications intercepted pursuant to state court authorized wiretaps could be used in the federal grand jury and criminal proceedings.” 535 F.2d at 701. Unlike the court in Marion, we are not called upon in the instant case to address the propriety of wiretaps issued under provisions of a state wiretapping statute and whether those state-issued wiretaps complied with federal law. Indeed, no such statute exists in Alabama.
Title 18, United States Code, § 2517(5), provides, in pertinent part:
*865 “When an investigative or law enforcement officer, while engaged in intercepting wire, oral, or electronic communications in the manner authorized herein, intercepts wire, oral or electronic communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used ... when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter.”
The record indicates that Special Agent Whittle’s affidavits alleged, and the district court’s orders stated, that there was probable cause to believe that Cabbie, among others, had committed or was committing various violations of federal law relating to the possession and distribution of controlled substances. There is no indication in the record that the investigators who were engaged in the judicially authorized electronic surveillance of the cellular telephones at issue intercepted wire or oral communications relating to offenses other than those specified in the order of approval issued by the district court in this case. Therefore, we conclude that there was no violation of § 2517(5) and that Cabbie’s argument to the contrary is without merit.
IV.
Finally, Cabbie contends that the circuit court erred in denying her motion to prevent the State from using sealed wiretap documents on Gerrick Brown’s cellular telephone number during the criminal proceedings against her. Cabbie argues that the wiretap documents on that cellular telephone number remained under seal and that the federal government’s failure to comply with provisions of 18 U.S.C. § 2518(8)(b) should have prevented the admission of the wiretap documents in an Alabama state court.
In the instant case, the record indicates that defense counsel received a copy of an order entered by the United States District Court for the Middle District of Alabama unsealing under 18 U.S.C. § 2518(8)(b), the wiretap information relative to Hicks’s cellular telephone number. At a hearing before the circuit court, the prosecutor explained to the court that an Assistant United States Attorney informed the State that the district court had also issued an order unsealing the wiretap information relative to Gerrick Brown’s cellular telephone number. The prosecutor stated that he would attempt to obtain a copy of the district court’s order on Ger-rick’s telephone number and deliver it to defense counsel as soon as possible. The record indicates, however, that the State was unable to locate or obtain a copy of a federal court order releasing the federal wiretap information on Gerrick’s cellular telephone number before a hearing on the motion to suppress was conducted. Thereafter, defense counsel renewed his objection to the admission of the evidence under seal.
“Applications made and orders granted [for the interception of wire, oral, or electronic communications] shall be sealed by the judge ... [and] shall be disclosed only upon a showing of good cause before a judge of competent jurisdiction.” 18 U.S.C. § 2518(8)(b). In United States v. Caggiano, 667 F.2d 1176 (5th Cir.1982), the United States Court of Appeals for the Fifth Circuit addressed the effect of noncompliance with 18 U.S.C. § 2518(8)(b), on the admissibility of wiretaps as follows:
“A failure to comply with the procedures of 18 U.S.C. § 2518(8)(b) may render an interception unlawful and its fruits inadmissible under 18 U.S.C. *866 § 2518(10)(a)(i). See, e.g., United States v. Lawson, 545 F.2d 557, 564 (7th Cir.1975); United States v. Chun, 503 F.2d 533, 542 n. 18 (9th Cir.1974). Such technical noncompliance necessitates suppression, however, only if the violated procedure is a central or a functional safeguard in the statutory scheme to prevent abuses of the wiretap act and if the purpose of the procedure has been frustrated or the procedure has been deliberately ignored. See, United States v. Diana, 605 F.2d 1307, 1312 ([4]th Cir.1979), cert. denied, 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980).”
667 F.2d at 1178-79 (footnote omitted).
We will assume, as the Fifth Circuit did in Caggiano, that “the sealing requirement is a central or a functional safeguard to prevent abuses of the wiretap act” based on the importance of preserving the confidentiality of wiretap applications and orders. 667 F.2d at 1179. However, Cabbie does not suggest on appeal that the district court’s alleged failure to enter an order unsealing the wiretap evidence as to Gerrick’s cellular telephone number promoted any breach of confidentiality or that the court’s failure to enter an order frustrated the purpose of the Wiretap Act; nor does she suggest that the State deliberately circumvented 18 U.S.C. § 2518(8)(b). Further, Cabbie does not argue how she was prejudiced by the alleged noncompliance with the procedural requirements of 18 U.S.C. § 2518(8)(b). Instead, Cabbie merely suggests that had the documents been sealed, they would not have been disclosed and she would not have had to move to suppress the wiretap evidence. Because Cabbie failed to demonstrate that the government’s “technical noncompliance” with 18 U.S.C. § 2518(8)(b) mandated suppression, the circuit court’s denial of her motion to prevent the State from using sealed wiretap documents on Gerrick’s cellular telephone number is due to be affirmed.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH and BURKE, JJ., concur. JOINER, J., concurs in part and concurs in the result in part, with opinion.

. During this time, Spivey was employed as an investigator in the Alabama Attorney General's Office and was assigned to the High Intensity Drag Trafficking Area Unit. In this capacity, Spivey worked with the Montgomery DEA Task Force.

. This Court has, however, addressed whether evidence obtained from a warrantless radio interception was admissible under the criminal-eavesdropping statutes. In Chandler v. State, 680 So.2d 1018 (Ala.Crim.App.1996), a police officer privately purchased a radio scanner that he placed in his patrol car. While listening to the scanner, the officer overheard a cordless telephone conversation implicating the defendant in drug-dealing activity. As a result of the overheard conversations, police conducted an investigation that resulted in the defendant’s arrest. Following his conviction, the defendant appealed and argued, among other things, that "the interception of his cordless telephone conversations violated ... Alabama’s criminal eavesdropping statutes, and that the evidence arising from the warrantless interception of these conversations therefore should be excluded.” Chandler, 680 So.2d at 1026.
On appeal, this Court held that the defendant failed to show under the criminal eavesdropping statutes that he had a reasonable expectation of privacy in his cordless telephone conversations and, therefore, failed to show how the criminal eavesdropping statutes applied in his case. Chandler, 680 So.2d at 1026. Further, this Court concluded that "even if the interception in this case constituted criminal eavesdropping ... the conversation intercepted would not be rendered inadmissible by that fact” because §§ 13A-11-30 and -31, Ala.Code 1975, "contain no exclusionary rule providing for the per se prohibition against use of evidence obtained in violation of the statutes.” Id.
Our holding in Chandler, however, is not controlling in this case because Chandler is both factually and legally distinguishable from the case at bar. Unlike Chandler, the telephone conversations in the instant case that were intercepted by police were private communications and the evidence gleaned from the telephone conversations was legally obtained pursuant to a federal wiretap warrant. In Chandler, the Court concluded that the telephone conversations were not private and that, therefore, the criminal-eavesdropping statutes did not apply to the conversations at issue.

. An "aggrieved person” is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed.” 18 U.S.C. § 2510(11).